AKRO-PLASTICS, Appellee,

v.

DRAKE INDUSTRIES, Appellant.

[Cite as *Akro–Plastics v. Drake Industries* (1996), 115 Ohio App.3d 221.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 95-P-0157.

Decided Oct. 7, 1996.

**222**

---

*Ralph L. Oates*, for appellee.

*Craig G. Pelini, W. Bradford Longbrake* and *William G. Simon, Jr.*, for appellant.

Nader, Judge.

This is an accelerated appeal from summary judgment rendered in the Portage County Court of Common Pleas in favor of plaintiff-appellee, Akro–Plastics, and against defendant-appellant, Drake Industries ("Drake").

Akro–Plastics manufactures backboards that are fitted into medical stretchers at its facility in Kent, Ohio. Sometime in early 1993, Akro–Plastics and Drake entered into an oral agreement whereby Drake would pick up large shipments of stretcher backboards at the Kent facility and take them to its own facility in Constantine, Michigan. There, Drake promised to inject foam into the boards as one stage in the manufacturing process and subsequently to return the boards to Kent. After that, Akro–Plastics would in turn sell the boards at retail to its customers.

On or about March 8, 1993, a fire broke out in Drake's facility that destroyed an entire shipment of three hundred sixty-four of Akro–Plastic's stretcher boards. Thereafter, Drake informed Akro–Plastics that it had improperly processed a second and third shipment of one hundred twenty-seven and one hundred ninety-two boards, respectively, and that the boards were useless. Although it is not entirely clear from the record, it appears that none of these boards were returned to Kent as promised.

On January 23, 1995, Akro–Plastics filed a complaint seeking recovery for the damage inflicted upon its property while in Drake's custody. The complaint contained three claims, one for each shipment. On October 16, 1995, Akro–Plastics filed a motion for summary judgment. Drake filed a motion in opposition on November 20, 1995, arguing that the court should apply Michigan law. The trial court applied Ohio law, granted Akro–Plastics' motion, and entered judgment against Drake in the amount of $79,646.

Drake timely initiated this appeal, and asserts the following as error:

"1. The trial court erred in applying Ohio law rather than Michigan law to a contract which is to be performed in Michigan and where the only relevant contact with Ohio is that one of the contracting parties [the plaintiff] is an Ohio corporation.

"2. The trial court erred in granting summary judgment where the evidence in the record is insufficient to determine the terms of the agreement between the parties; and where the evidence and facts that do appear in the record regarding the agreement are conflicting and disputed.

"3. The trial court erred when it awarded damages where there is no evidence or facts in the record to support the damages alleged by Plaintiff and awarded by the trial court; and where the evidence and facts that do appear in the record are

conflicting and disputed; and where the trial court improperly placed the burden of proof on Defendant."

With regard to the first assignment of error, Drake argued to the court below that Michigan law should apply on the principle that, in an action on a contract, the law of the state where a contract is to be performed governs the issues raised in a case where there is a conflict between the laws of two or more jurisdictions. See, generally, *Gries Sports Ent., Inc. v. Modell* (1984), 15 Ohio St.3d 284, 15 OBR 417, 473 N.E.2d 807. See, also, *Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co.* (1983), 6 Ohio St.3d 436, 438, 6 OBR 480, 481–482, 453 N.E.2d 683, 685–686. The trial court completely ignored Drake's arguments, and conducted a minimum-contacts analysis instead. Drake repeats the argument here, but we reject it because Drake has failed to properly demonstrate how Ohio law and Michigan law are in conflict.

Resort to the principles of conflict of laws is necessary only if there is an actual conflict between local law and the law of another jurisdiction. *Canadian Overseas Ores Ltd. v. Compania, Etc.* (S.D.N.Y.1982), 528 F.Supp. 1337, 1339–1340, affirmed (C.A.2, 1984), 727 F.2d 274; see, also, *Jarvis v. State Farm Mut. Auto. Ins. Co.* (Dec. 30, 1993), Cuyahoga App. No. 64597, unreported, 1993 WL 541583, at 2; Restatement of the Law 2d, Conflict of Laws (1971) 2, Section 1, comment *b*.[1] Local law applies if the party alleging that the law of a foreign jurisdiction applies fails to demonstrate a conflict between local law and the law of that jurisdiction. *Canadian Overseas, supra.*

Admittedly, Drake has attempted to meet its burden of demonstrating a conflict. In its appellate brief, Drake cites certain provisions of Michigan's no-fault automobile insurance law, under which a claimant suffering property damage arising out of the maintenance of a motor vehicle must bring an action against the vehicle owner's insurance carrier. Mich.Stat.Ann. 24.13121 (Callaghan 1994). See, also, *Michigan Basic Prop. Ins. Assn. v. Michigan Mut. Ins. Co.* (1983), 122 Mich.App. 420, 332 N.W.2d 504. Drake alleges in its brief that the fire that caused the damage to the first shipment of stretcher backboards was started by an employee while grinding the hitch from a company trailer. Sparks from the grinder ignited paper stored nearby, and the ensuing blaze destroyed the boards. The argument is that the employee was conducting maintenance work on a motor vehicle and that Akro–Plastics must therefore sue Drake's

---

1. "Problems arise when legally significant aspects of a case are divided between two or more states * * *. Suppose that A injures B in state Y and B brings suit against A in state X to recover for his injuries. *If the local rules of X and Y differ in relevant respects,* the X court may be called upon to decide whether to apply the rules of one state rather than the rules of another." (Emphasis added.)

insurance carrier; because Drake is the wrong party-defendant under Michigan law, there exists a conflict with Ohio law, which has no such requirement.

Notwithstanding the foregoing, we must confine our analysis only to the facts existing in the trial record as provided by an appellant. App.R. 12(A)(1)(b). The composition of the record is particularly important, because the appellant bears the burden of demonstrating errors by reference to the matters existing therein. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 219–220, 400 N.E.2d 384, 385–386. According to App.R. 9(A), the record on appeal consists only of "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court."

■ A careful review of the trial record in this case reveals that the assertion that Drake's employee was grinding a trailer hitch, hence subjecting this case to the no-fault automobile insurance laws, while appearing in Drake's brief on appeal, does not appear in the pleadings, the motions, the memoranda in support and opposition, or the affidavits filed in the court below. Therefore, this assertion of fact does not form any part of the trial record. Essentially, Drake has introduced it on appeal in a belated attempt to demonstrate how Michigan law conflicts with Ohio law. However, factual assertions appearing in a party's brief, but not in any papers submitted for consideration to the trial court below, do not constitute part of the official record on appeal, and an appellate court may not consider these assertions when deciding the merits of the case. See *State v. Stevens* (Dec. 22, 1994), Cuyahoga App. No. 67400, unreported, 1994 WL 716350, at fn. 1 (court would not consider factual matters contained in both parties' briefs but not in the record); *Estate of Dindot* (June 4, 1993), Paulding App. No. 11–93–1, unreported, 1993 WL 195083, at 2 (court would not consider factual allegation in appellant's brief that appellee had notice of a judgment being revived where that fact did not appear in the record); *State v. Reichenbach* (Aug. 20, 1991), Franklin App. No. 90AP–1223, unreported, 1991 WL 224532, at 3 (court would not consider a number of mitigating factors presented in appellant's brief but not to the trial court when deciding whether trial court abused its discretion in sentencing appellant).

The assertion that the employee in question was grinding a trailer hitch being unsupported, Drake has failed to meet its burden of demonstrating that Michigan law and Ohio law are in conflict. The trial court did not err when it failed to address Drake's argument below. The first assignment of error is without merit.

In its second assignment of error, Drake alleges that the trial court erred when it granted Akro–Plastics' motion for summary judgment. We agree.

The standard for granting summary judgment is familiar enough: a party moving for summary judgment bears the burden of establishing that (1) no issue of material fact remains to be litigated, (2) the moving party is entitled to summary judgment as a matter of law, and (3) it appears from the evidence, when viewed in a light most favorable to the nonmovant, that reasonable minds can only come to a conclusion adverse to the nonmovant. *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1131–1132. In the context where a party seeks to establish his or her own claim as a matter of law under Civ.R. 56(A), the movant bears the burden of affirmatively demonstrating that there are no genuine issues of material fact with respect to every essential element of the claim. *Stillwell v. Johnson* (1991), 76 Ohio App.3d 684, 688, 602 N.E.2d 1254, 1257. The motion for summary judgment must be denied if the movant fails to satisfy this initial burden. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274.

■ According to Civ.R. 7(B)(1) a party moving for summary judgment must state the grounds upon which it moves with specificity. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Here, the motion for summary judgment filed by Akro–Plastics fails to identify which theory of liability it sought to establish as a matter of law. The arguments made are equally applicable in an action for breach of a processing agreement, breach of bailment, breach of implied warranty of workmanlike performance, and negligence. Because Akro–Plastics has failed to adequately set forth the grounds upon which it has moved for summary judgment, it has failed to carry its burden of establishing its claims as a matter of law. Therefore, the motion should have been denied, *Dresher, supra,* and the trial court erred in granting it. Drake's second assignment of error is well taken.

In its third assignment of error, Drake argues that the trial court also erred in finding sufficient evidence to award damages in this case. We agree.

■ It is axiomatic that every plaintiff bears the burden of proving the nature and extent of his damages in order to be entitled to compensation. *Columbus Fin. Inc. v. Howard* (1975), 42 Ohio St.2d 178, 184, 71 O.O.2d 174, 177, 327 N.E.2d 654, 658–659. When a defendant causes a loss to the plaintiff's personal property, the general rule is that damages are to be measured by the difference between the fair market value of the property immediately before the loss and the fair market value of the property immediately after the loss. See, e.g., *Cooper v. Feeney* (1986), 34 Ohio App.3d 282, 283, 518 N.E.2d 46, 47–48. Where the property is completely destroyed, the damages are to be reduced by the salvage value of the scrap. *Maloney v. Gen. Tire Sales, Inc.* (1973), 34 Ohio App.2d 177, 184, 63 O.O.2d 289, 293–294, 296 N.E.2d 831, 836. In ordinary cases where a defendant damages a consumer good or other property in the ultimate

consumer's hands, fair market value is easily determined, because there essentially is only one market for such items by which to measure market value.

However, when goods are not in the hands of consumers, but are still lodged somewhere in the chain of distribution, the concept of fair market value becomes less obvious. As explained in the Restatement of the Law 2d, Torts (1979) 473, Section 911, comment d:

"From the time when a chattel is manufactured to the time of its actual use, there may be many markets in which it is sold. Thus, different prices are paid by the wholesaler, the retail dealer and the consumer. Since the measure of recovery is determined by the harm done, the market that determines the measure of recovery by a person whose goods have been taken, destroyed or detained is that to which he would have to resort in order to replace the subject matter. Thus, the consumer can recover the retail price; the retail dealer, the wholesale price."

■ It has been consistently held that when goods belonging to a wholesaler are wrongfully damaged or destroyed, the price of the goods is to be determined by the replacement cost, or the wholesale value of the goods. *Skaggs Drug Centers, Inc. v. Idaho Falls* (1965), 90 Idaho 1, 407 P.2d 695; *Dubiner's Bootery, Inc. v. Gen. Outdoor Advertising Co.* (1960), 10 A.D.2d 923, 200 N.Y.S.2d 757; *Whaley v. Crutchfield* (1956), 226 Ark. 921, 294 S.W.2d 775. See, also, *The Limited Stores, Inc. v. Pan Am. World Airways, Inc.* (1992), 65 Ohio St.3d 66, 71, 600 N.E.2d 1027, 1032 (retailer is only entitled to wholesale price of goods in stock damaged by carrier unless cover on the wholesale market is impossible). "The theory underlying this rule is that if the owner of lost or destroyed property is a retailer * * *[,] the goods may be replaced at their wholesale value and subsequently sold at retail just as the original goods would have been sold." *Chevron Chem. Co. v. Streett Industries* (E.D.Mo.1982), 534 F.Supp. 801, 803. Additionally, the retailer or wholesaler is not entitled to resale price because, without the actual sale, it has not yet earned the profit, and there is no reason to compensate it for something it did not lose. *Millison v. Ades of Lexington, Inc.* (1971), 262 Md. 319, 277 A.2d 579; *Whaley*, 294 S.W.2d at 779.[2]

---

2. Both the *Millison* and *Whaley* opinions rely on the following quotation from 1 *Sedgwick on Damages* (9 Ed.1912) 500–501, Section 248a:

"Where in the ordinary case a value is to be found for a single thing, the value is what that single thing would sell for; which amounts to the retail value of it. But when a court is dealing with a stock of goods held for sale, or even with a portion of such stock, the value to be found is its value as a stock or a part of a stock of goods, that is, its wholesale value, without the profit of resale which enters into the retail value; for at the time of valuation that profit has not yet been earned, or, to put the matter in another way, the process of distribution, which brings the goods into the hands of the consumer and thus gives them their final increment of value, has not yet taken place."

■ The theory underlying the replacement cost measure of damages for wholesalers and retailers applies equally to the manufacturer, although the manufacturer does not purchase goods in the same sense that the wholesaler and retailer do. If the manufacturer's goods are destroyed, it is in the position to acquire more raw materials and produce substitute goods to sell thereafter in the normal course of business. Additionally, it has not yet sold the goods to a wholesaler, retailer, or directly to the consumer, and so has not yet earned any profit. We find the aforementioned authorities persuasive, and hold the proper measure of damages in tort actions to recover damages for injuries to goods still belonging to the manufacturer to be the replacement cost, or the cost to manufacture substitute goods, immediately before the loss, less the salvage value of the goods, if any, immediately after the loss.[3]

■ In this case, Akro–Plastics is the manufacturer and also the retailer of these stretcher boards. It alleged in its complaint that the first shipment of three hundred sixty-four boards had a "market value" of $130 per board, for a total "market value" of $47,320; that the second shipment of one hundred twenty-seven boards had a "market value" of $58 per board, for a total "market value" of $7,366; and that the third shipment of one hundred ninety-two boards had a "market value" of $130 per board, for a total "market value" of $24,960. There is no indication anywhere in the trial record as to what market Akro–Plastics was referring to. It is not entitled to the retail price of these boards—only the replacement cost, which is measured by the cost to manufacture them. We suspect that, because Akro–Plastic used the term "market price," these figures reflect the retail cost of the boards. By relying on these estimates of value without an explanation as to what they refer to, the trial court committed reversible error.

■ Drake asserted during oral argument that the trial court should also have offset the amount of damages by the amount that Drake's efforts improved the goods. It argued that, if the boards hypothetically cost $5 per board to produce, and if it hypothetically added the foam at $2 per board, this increase in production cost should not be chargeable to Drake, and that it should only have to pay the $5 per board. We disagree.

---

3. In this, we disagree with the statement in Comment *d* of Section 911 of the Restatement, *supra,* that the "manufacturer, who does not buy in a market, receives his selling price." Such a rule would allow the manufacturer to recover his profits for unrealized sales where the wholesaler and retailer could not. The cardinal principle in the law of compensation is that a plaintiff must be furnished only with that which will make him whole. `As the courts are not in the business of providing windfalls to successful litigants, overcompensation is to be strictly avoided. See *Henderson v. Spring Run Allotment* (1994), 99 Ohio App.3d 633, 645, 651 N.E.2d 489, 497–498.

The calculation of replacement cost hinges on when the boards were destroyed or lost. If the boards were destroyed or lost before the foam was injected, then Akro–Plastics would have to expend only that effort, to reproduce unfoamed boards, which cost $5 per board to manufacture to that stage. If the boards were destroyed or lost after Drake injected the foam, then Akro–Plastics would need to expend that effort required to reproduce foamed boards, which cost $7 per board to manufacture to that stage. It appears that all the losses in this case occurred after Drake injected the foam into the boards. In order to completely replace the foamed boards, Akro–Plastics would have to expend that effort required to process the boards through the foaming stage. If Drake remains uncompensated for its work, it should have brought a counterclaim for breach of the processing agreement for the price of its services, or the reasonable value thereof. Drake is not entitled to a setoff in this manner.

On balance, Drake's third assignment of error is well taken.

Because the trial court erred in granting summary judgment on both issues of liability and damages, we reverse its judgment and remand the case for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., and MAHONEY, J., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth District Court of Appeals, sitting by assignment.