OPINION
Robert Lowe appeals from a judgment of the Clark County Court of Common Pleas which convicted him of one count of negligent homicide and one count of child endangering and sentenced him to six months in the Clark County Jail to be served concurrently with five years of incarceration and to pay a fine and the costs of the proceeding.
The record reveals as follows. On January 9, 1999, Lowe was babysitting for Mycah and Mycala Messer, the twenty three month old twin daughters of Jami Persinger, while Persinger was at work. Lowe was not the biological father of the twins. According to Lowe, the twins were fighting over a toy so he separated them. He placed Mycah on the couch and sat down next to her. He then began throwing her into the air to play with her and to "make her happy." [OIBRS Investigator Notes p. 2] On the third or fourth throw into the air, Mycah became entangled in his arms while he was attempting to catch her and she fell to the floor, landing on her head. Mycah started vomiting and then stopped breathing. Lowe ran, with Mycah, to a neighbor's house to call 911.
Lowe reported to the paramedics, hospital staff, police authorities, and Persinger that Mycah had started vomiting and then had stopped breathing, without informing them that she had fallen on her head. Paramedics and hospital personnel were unable to revive Mycah.
On January 11, 1999, Lowe was interviewed by deputies of the Clark County Sheriff's Office. During the interview, he eventually revealed that he had been throwing Mycah into the air and that she had fallen on her head before she had started vomiting.
In his autopsy report, the pathologist concluded that Mycah had "died as a direct result of blunt head trauma." He further concluded that there had been more than one episode of severe blunt head trauma to Mycah, with one episode causing a fracture of the skull occurring between one and three weeks prior to her death and another episode closer to the time of her death which had resulted in a refracturing of her skull. [Pg. 3 Coroner Report]
Lowe was indicted on March 1, 1999 for one count of felony involuntary manslaughter in violation of R.C. 2903.04(A), one count of misdemeanor involuntary manslaughter in violation of R.C. 2903.04(B), and one count of child endangering in violation of R.C. 2919.22(A). On August 4, 1999, Lowe entered a plea agreement whereby the state amended the indictment to allege one count of negligent homicide in violation of R.C. 2903.05(A) and one count of child endangering in violation of R.C.2919.22(A), and Lowe pled guilty to both counts. On August 27, 1999, he was sentenced to six months in the Clark County Jail for the count of negligent homicide, to five years of incarceration and to pay a fine for the count of child endangering, and to pay the costs of the proceeding. The two terms of incarceration were ordered to be served concurrently.
Lowe now appeals the trial court's sentence. On April 28, 2000, Lowe's appointed counsel filed a brief asserting that he had been unable to find any meritorious claims to present for review. Pursuant to Anders v. California (1967), 386 U.S. 738, 87 S.Ct. 1396, we granted Lowe sixty days to file a pro se brief assigning errors for review. On July 17, 2000, new counsel filed an entry of appearance and a brief on behalf of Lowe advancing four assignments of error. The state has not filed a brief responding to Lowe's assignments of error.
 I. THE DEFENDANT-APPELLANT['S] DEFENSE WAS PREJUDICED DURING THE PLEA AGREEMENT, THE TRIAL ITSELF AND NOW IN HIS APPELLATE BRIEF, BY INADEQUATE REPRESENTATION OF COUNSEL, WHOSE ACTIONS ARE LESS THAN AN ACTIVE ADVOCATE ON BEHALF OF HIS CLIENT.
Lowe argues that his court appointed attorneys failed to provide him adequate representation throughout his case. Specifically, Lowe states that his appointed trial attorney led him to believe that his plea agreement and cooperation with the state and court would increase the likelihood of a lesser sentence. Lowe claims that his appointed trial attorney had "an inkling of a notion that the Court intended to impose the maximum sentence" but failed to tell him of that notion. [Br.p. 13] He states that he did not speak on his own behalf before his sentencing because his attorney led him to believe that his guilty plea and plea agreement were "enough to yield a lesser sentence." [Br.p. 13] He asserts that he was prejudiced by not speaking on his own behalf because "the Court felt that his decision not to speak on his own behalf proved his lack of remorsefulness." [Br.p. 13] He claims that when the trial court found that he had no remorse, his attorney should have argued to the court that the presentence investigation report showed that he was remorseful. He states that his attorney should have questioned the trial court's imposition of a sentence beyond the minimum sentence required. Finally, he asserts that his appointed attorney on appeal, a different attorney than he had had at trial, was ineffective because he filed a brief asserting that he had been unable to find any meritorious issues for review when, in reality, there were viable issues for appeal.
Lowe's claims of error are not supported by the record. There is no evidence in the record that his appointed trial counsel led him to believe that his plea agreement and cooperation would result in a lesser sentence or that he would receive a lesser sentence without speaking on his own behalf prior to sentencing. In fact, during the change of plea hearing, the court directly questioned Lowe and Lowe responded that he understood that the court could impose the maximum possible sentence for each count and that no one had made any promises to him regarding the length of the sentences.
In his Anders brief, Lowe's appointed appellate attorney stated that he was not surprised by the state's request for the maximum sentence. Lowe argues that such statement reveals that his appointed trial attorney had a notion that the maximum sentence would be imposed. Such argument is not persuasive for a number of reasons. First, his appointed appellate attorney and appointed trial attorney were not the same person, so a statement made by his appointed appellate attorney cannot be accepted as an indicator of what his appointed trial attorney must have thought. Second, statements in an appellate brief are not part of the trial record and thus cannot be considered on direct appeal. Akro-Plastics v. Drake Indus. (1996), 115 Ohio App.3d 221, 225,685 N.E.2d 246, 249; App.R. 9(A). Third, even if Lowe's appointed trial counsel did have a notion that the maximum sentence would be imposed, there is no evidence in the record that his counsel failed to inform him of such notion.
Nothing in the record support's Lowe's claim that he decided not to speak on his own behalf because his appointed trial counsel had led him to believe that it was not necessary to receive a lesser sentence. Further, no evidence in the record supports his contention that his failure to speak on his own behalf prior to sentencing caused the trial court to conclude that he was not remorseful. In fact, while sentencing Lowe, the trial judge stated that, after reading the presentence investigation report, he had concluded that Lowe had no genuine remorse.[DispositionTr.p. 6]
Also contrary to Lowe's assertions, the presentence investigation does not show that he was remorseful. Instead, the probation officer making recommendations in the presentence investigation report explicitly stated, "I have never seen any genuine remorse out of this defendant."[PSIp.11] Further, considering the evidence in the record, we will not conclude that Lowe's appointed trial counsel was ineffective for failing to question the trial court's imposition of the maximum sentence. Finally, Lowe's arguments regarding the ineffectiveness of his appointed appellate counsel are moot because a merit brief was filed on his behalf following the filing of the alleged deficient brief.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY FAILING TO PROPERLY EVALUATE THE PRE-SENTENCE INVESTIGATION REPORT, IN PARTICULAR, BY NOT CONSIDERING DEFENDANT-APPELLANT'S REMORSEFULNESS, AND BY NOT PROPERLY EXAMINING HIS RECORD; THUS, THE MAXIMUM SENTENCE, AN UNDULY HARSH AND UNJUSTLY SEVERE SENTENCE[,] WAS IMPOSED.
Lowe argues that the trial court "never really considered or properly employed the [presentence investigation] report's outcome."
The record does not support Lowe's arguments. The trial court's conclusions were similar to the recommendations made in the presentence investigation report. Further, the trial court's imposition of the maximum sentence was also consistent with the presentence investigation report's conclusion that "a long term of incarceration [was] appropriate to punish [Lowe]." [PSIp.11]
The second assignment of error is overruled.
 III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY FAILING TO PROPERLY EVALUATE THE FACTS, IN PARTICULAR, BY INCORRECTLY LABELING THE OFFENSE AS "THE WORST FORM OF CHILD ENDANGERMENT" AND BY ERRONEOUSLY WEIGHING DEFENDANT-APPELLANT'S LIKELIHOOD FOR RECIDIVISM; THUS, THE MAXIMUM SENTENCE, AN UNDULY HARSH AND UNJUSTLY SEVERE SENTENCE[,] WAS IMPOSED.
Lowe argues that the trial court erred in imposing the maximum sentence for the count of child endangering because the trial court mistakenly concluded that Lowe's act was the worst form of the offense and that recidivism was likely.
An appellate court can modify a sentence if it clearly and convincingly finds that the record does not support the sentence or that the sentence is contrary to law. R.C. 2953.08(G)(1). In reviewing the sentence, we must remember that the trial court has broad discretion to determine the most effective way to protect the public from future crime and punish the offender. State v. Hawkins (Aug. 19, 1999), Cuyahoga App. No. 74678, unreported, dismissed (1999), 87 Ohio St.3d 1459, 720 N.E.2d 541; R.C.2929.11 (listing the overriding purposes of felony sentencing).
Lowe's act of child endangering was a third degree felony. R.C.2919.22(E)(1)(c). The prison term for a third degree felony is one, two, three, four, or five years. R.C. 2929.14(A)(3). Lowe was sentenced to five years of imprisonment on the child endangering count, the maximum sentence allowed for that offense.
To impose the maximum sentence on Lowe in this case, the trial court had to determine either that Lowe committed the worst form of the offense or that he posed the greatest likelihood of committing future crimes. See R.C. 2929.14(C). The trial court concluded that because his actions had "caused the death of a very young child[,]" he had committed the worst form of the offense of child endangering.
Lowe argues that his actions did not constitute the worst form of the offense of child endangering because he did not intentionally allow Mycah to fall but instead accidentally allowed her to fall through his arms and land on her head.
Although Lowe claims that his actions were accidental, the presentence investigation report reveals that Persinger did not believe his version of the events because, according to her, Mycah was afraid of heights and did not like to be thrown into the air. Instead, Persinger believed that Lowe had gone "into a violent rage" due to Mycah's failure to cooperate with him. [PSIp.15] Further, the coroner's report indicates that Mycah's head was also fractured on a prior occasion between one and three weeks before her death.
More importantly, after Mycah fell, Lowe failed to inform the paramedics, hospital staff, police authorities, and Persinger of the alleged fall, but instead told them that she had just started vomiting. As the trial court concluded, his "silence [while] the child was being treated show[ed] a greater concern of protecting himself than protecting the health of the child."
Ultimately, Lowe did not reveal the truth about Mycah's fall until he was informed by police authorities that Mycah had had a skull fracture, that he and Persinger had been the only individuals who had been alone with the twins prior to Mycah's death, and that his story about tripping while carrying her about one week prior to her death could not have been the cause of the fracture because the fracture was in the rear of her skull. During the presentence investigation, Lowe told the probation officer that he had not informed authorities of Mycah's fall because it would not have mattered since Clark County is "crooked." When asked if he thought such information might have allowed Mycah to receive the correct medical care, he stated, "no."
Finally, even if Lowe's actions were accidental, they did result in Mycah's death. The death of a child must be among the worst, if not the worst, form of child endangering. Thus, we will not conclude that the trial court erred in concluding that Lowe's actions constituted the worst form of the offense.
The record also supports the trial court's finding that Lowe's recidivism was likely because it reveals that he failed to show genuine remorse for the offense and he had a prior delinquency conviction. See R.C. 2929.12(D). Further, none of the factors indicating that Lowe would be less likely to commit future crimes were applicable to the circumstances surrounding his offense. See R.C. 2929.12(E).
The third assignment of error is overruled.
 IV. THE TRIAL COURT'S FIRST SENTENCE WAS A PROPER SENTENCE FALLING BETWEEN THE MINIMUM AND MAXIMUM SENTENCED [sic] ALLOWED BY LAW, AND THUS, THE RE-SENTENCING OF DEFENDANT-APPELLANT CONSTITUTES DOUBLE JEOPARDY IN VIOLATION OF DEFENDANT-APPELLANT'S SIXTH AMENDMENT RIGHTS.
After finding Lowe's acts to constitute the worst form of the offense, the trial court sentenced Lowe to six months on the count of negligent homicide and to two years on the count of child endangering. The record reveals that the defendant departed from the courtroom and then the judge asked that he be brought back into the courtroom. The trial court then stated as follows:
 Going back on the record * * *. The Court erred in setting the sentence in the child endangering. Using the guidelines of the statute that was in effect prior [sic] to July 1st of '96 under the statute for which this Defendant was sentenced and the factors which were found by the Court to be true, * * * this Court having found the Defendant to have committed the worst form of the offense of child endangering, it's the order of the Court [that] the Defendant be sentenced to five years in the Ohio State Penitentiary. The remainder of the order is the same.
[Disposition Hrgp.8-9]
Although Lowe's brief states that he had been placed in a holding cell after he had departed the courtroom and before he was resentenced, there is no evidence in the record that supports that assertion.
"Once a valid sentence has been executed, a trial court no longer has the power to modify the sentence except as provided by the General Assembly." State v. Addison (1987), 40 Ohio App.3d 7, 530 N.E.2d 1335, syllabus. "When the full sentence of a defendant involves imprisonment, the execution of the sentence is commenced when the defendant is delivered from the temporary detention facility of the judicial branch to the penal institution of the executive branch." Id. at 9,530 N.E.2d at 1337. Further, a trial court may resentence a defendant to a more severe sentence before the sentence has been executed without violating the guarantees of the Double Jeopardy Clause because before a sentence is executed, it "lacks the constitutional finality of a verdict of acquittal." State v. Meister (1991), 76 Ohio App.3d 15, 17,600 N.E.2d 1103, 1104, citing United States v. DiFrancesco (1980),449 U.S. 117, 101 S.Ct. 426.
Although Lowe might have been placed in a holding cell before the judge resentenced him, the execution of his sentence had not commenced because he had not been delivered to the penal institution. Thus, the trial court had the power to modify Lowe's sentence at the time it called him back into the courtroom, and the protections of the Double Jeopardy Clause were not violated when he was resentenced.
The fourth assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.