[Cite as *State v. Dawson*, 2013-Ohio-4074.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

WILLIAM D. DAWSON

      Defendant-Appellant


Appellate Case No.    25448

Trial Court Case No.   2012-CR-2038

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 20th day of September, 2013.

. . . . . . . . . . .


MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069826, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

TINA M. MCFALL, Atty. Reg. No. 0082586, Assistant Public Defender, Law Office of the Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-Appellant, William Dawson, appeals from his conviction and sentence, following a no-contest plea to a charge of Failure to Notify in violation of R.C. 2950.05(A) and (F)(1).   After pleading no contest, Dawson was found guilty and was sentenced to community control sanctions.   The trial court suspended all sanctions pending appeal, other than treatment at Daymont West, completion of a Community Employment Class at Goodwill Easter Seals, and compliance with sex offender registration requirements.

{¶ 2}    Dawson contends that the trial court erred in overruling his motion to dismiss the indictment.   Dawson further contends that the trial court erred when it found him guilty of Failure to Notify under R.C. 2950.05(A) and (F)(1).

{¶ 3}    We conclude that the trial court did not err in overruling Dawson's motion to dismiss the indictment, which was based on alleged error in a prior juvenile court proceeding. Even if the juvenile court had erred in failing to timely hold a sexual offender classification hearing, the juvenile court's decision cannot be collaterally attacked.   Dawson's proper remedy was to appeal from the classification decision made by the juvenile court.   The trial court also did not err in finding Dawson guilty of Failure to Notify.   The evidence Dawson presented in support of this assignment of error involves matters outside the trial court record and cannot be considered on appeal.   For the same reason, the State's motion to strike the appendix to Dawson's brief will be granted.   Accordingly, the judgment of the trial court will be affirmed.

## I.  Facts and Course of Proceedings

{¶ 4}     The facts in the case before us are not in dispute.  In March 2002, a complaint was filed in Montgomery County Juvenile Court (J.C. No. A 2002-3512 02), alleging that Dawson had committed a sexually-oriented offense at the age of 14.  The juvenile court found Dawson to be a delinquent child in May 2002, following his admission to having committed gross sexual imposition in violation of R.C. 2907.05, which would have been a felony of the third degree if committed by an adult.  At disposition, which was held on September 20, 2002, the juvenile court ordered Dawson into the custody of the Department of Youth Services (DYS) for a minimum of six months and a maximum period not to exceed Dawson's 21st birthday.  However, the time in DYS was suspended, and Dawson was ordered to serve a period of probation until September 30, 2003.  He was also ordered to attend the Dora Tate Juvenile Program for eight days, pay restitution, have no contact with the victim, and attend outpatient therapy after school at the Lighthouse Program.  The juvenile court did not impose classification as a sex offender registrant at that time.

{¶ 5}     Dawson's probation was extended twice after violations of court orders in January 2003 and January 2004.  Subsequently, in June 2005, Dawson's probation officer filed a motion for probation to be extended, for custody and placement, and for sexual offender classification of Dawson.  The juvenile court then ordered probation to be continued until October 2005 and terminated the Lighthouse placement.  In addition, the court classified Dawson as a Juvenile Sex Offender Registrant pursuant to R.C. 2152.83(B).  The court also held that Dawson was required to register pursuant to R.C. 2950.03, as he was 14 years old at the time of the offense.  Finally, the court ordered Dawson placed with the George Foster Group Home in

Dayton, Ohio.   An entry reflecting these findings was filed on June 29, 2005.   Dawson did not appeal from the juvenile court judgment.

{¶ 6}     In June 2012, Dawson was indicted by the Montgomery County Common Pleas Court for Failure to Notify, a felony of the third degree.   Dawson filed a motion to dismiss the indictment, contending that the juvenile court order imposing the sex offender classification was void because the court failed to comply with statutory requirements for imposing the classification.   The trial court overruled the motion to dismiss in September 2012, concluding that the juvenile sex offender hearing and classification were timely.   Dawson filed a motion for reconsideration on September 24, 2012, arguing that the trial court may have made a mistake of fact, since the Lighthouse Youth Facility was not a "secure facility."   The trial court overruled the motion for reconsideration on September 27, 2012.   The same day, Dawson pled no contest to the charge of Failure to Notify, and was sentenced to community control sanctions, most of which were stayed by the trial court, other than as noted above.

{¶ 7}     Dawson appeals from his conviction and sentence.

## II.  Did the Trial Court Err in Overruling the Motion to Dismiss?

{¶ 8}     Dawson's First Assignment of Error is as follows:

The Trial Court Erred As a Matter of Law When It Overruled the Defendant's Motion to Dismiss.

{¶ 9}     Under this assignment of error, Dawson contends that the juvenile court was required to classify him as a juvenile sex offender at the time of his disposition in September 2002.  This is based on the fact that R.C. 2152.83(B)(1) allows juvenile offenders ages 14 or 15

at the time of the offense to be classified only at the time of disposition or at the time they are released from a secure facility. However, Dawson was never committed to a statutorily defined secured facility. Accordingly, he contends that the juvenile court lacked jurisdiction to rule on his status by waiting for almost three years after his dispositional hearing.

{¶ 10}    R.C. 2152.83 became effective on January 1, 2002, shortly before the complaint was filed against Dawson in juvenile court. *See generally* Am.Sub.S.B. No. 3, 149 Ohio Laws, Part I, 537. The statute was amended in July 2002, and at the time of Dawson's disposition, R.C. 2152.83(B)(1) provided that:

> The court that adjudicates a child a delinquent child, on the judge's own motion, may conduct at the time of disposition of the child or, if the court commits the child for the delinquent act to the custody of a secure facility, may conduct at the time of the child's release from the secure facility, a hearing for the purposes described in division (B)(2) of this section if all of the following apply:
>
> (a) The act for which the child is adjudicated a delinquent child is a sexually oriented offense that the child committed on or after January 1, 2002.
>
> (b) The child was fourteen or fifteen years of age at the time of committing the offense.
>
> (c) The court was not required to classify the child a juvenile sex offender registrant under section 2152.82 of the Revised Code. Sub.H.B. No. 393, Section 1, 149 Ohio Laws, Part IV, 7386, 7428-7429.[1]

{¶ 11}    At the time of Dawson's disposition, R.C. 2153.83(G) further provided that "as

---

[1] R.C. 2152.82 does not apply here, as it pertains to repeat sexual offenders.

used in this section, 'secure facility' has the same meaning as in section 2950.01 of the Revised Code." *Id.* at 7431. The definition of a "secure facility" in R.C. 2950.01(K) was "any facility that is designed and operated to ensure that all of its entrances and exits are locked and under the exclusive control of its staff and to ensure that, because of that exclusive control, no person who is institutionalized or confined in the facility may leave the facility without permission or supervision." Am.Sub.S.B. No. 3, Section 1, 149 Ohio Laws, Part I, 537, 571.[2]

{¶ 12} The juvenile court failed to comply with the statutory requirements, because it did not conduct a juvenile sexual offender hearing at Dawson's disposition. Dawson was also not committed to a secure facility. Instead, the juvenile court held a hearing almost three years later and then imposed the sexual offender designation.

{¶ 13} In the case of *In re McAllister*, 5th Dist. Stark No. 2006CA00073, 2006-Ohio-5554, the Fifth District Court of Appeals concluded that a juvenile court had erred in classifying the defendant as a juvenile sex offender thirteen months after his release from the DYS. In this regard, the court stated that:

> The state's motion to classify appellant as a juvenile sex offender, the hearing and the trial court's determination were all made after appellant's release from a secure facility. As we stated in *In the Matter of: Lucas A. Callahan*, Ashland App. No. 04COA064, 2005-Ohio-735, ¶ 11, "We conclude the General Assembly's use of the word 'may' and the use of the conjunction 'or' triggers the trial court's discretion regarding when to make a sexual predator determination." Therefore, the trial court has two times when it *may* consider classification under

---

[2] The definition of "secure facility" remains the same today. See R.C. 2950.01(O).

R.C. 2152.83(B)(1): 1) at the time of disposition, *or* 2) at the time of release from a secure facility.

The use of the word "may" in the statute provides a trial court with discretion on whether to classify a juvenile and at what times to classify the juvenile. Once the two cited time frames have lapsed, the trial court's jurisdiction as to classification is terminated. *McAllister* at ¶ 9-10.

{¶ 14} We subsequently considered a similar situation, where the trial court conducted a sexual offender hearing two months after the defendant was released from a secure facility. *See In re B.W.*, 2d Dist. Darke No. 1702, 2007-Ohio-2096, ¶ 14. In that case, the juvenile, B.W., relied on *McAllister*, and contended that the trial court lacked jurisdiction to classify him. *Id*. at ¶ 11. We rejected his argument, noting that:

B.W.'s hearing was held in July, a little more than two months after B.W.'s release from a secure facility and while he was yet under DYS supervision, and, given the numerous factors that the trial court must consider in classifying a juvenile offender, R.C. 2152.83(B), (E), we cannot say that the trial court was unreasonable in holding the hearing in July. In other words, "at the time of the child's release from the secure facility" necessarily incorporates a short interval of time (here, two and a half months, and not thirteen) before jurisdiction is lost. Clearly, the legislature did not intend to mandate a classification simultaneous with release, but merely within a reasonable time given docket constraints and appropriate time for evaluations appurtenant to classification. Since the trial court had jurisdiction to classify B.W., his first assignment of error is overruled.

*Id*. at ¶ 14.

**{¶ 15}** Implicit in our decision is the fact that jurisdiction can lapse if a longer period of time is involved, such as the thirteen-month period in *McAllister* – and most certainly the nearly three-year period involved in the case before us. However, neither *B.W.* nor *McAllister* discussed the subject of jurisdiction in detail. In 2010, the Twelfth District Court of Appeals cited *McAllister* for the proposition that a "juvenile court's failure to follow the procedure outlined in R.C. 2152.83(A)(1) implicates an improper exercise of the court's subject matter jurisdiction." (Other citation omitted.) *In re T.D.*, 12th Dist. Clinton No. CA2010-01-002, 2010-Ohio-6081, ¶ 30.

**{¶ 16}** In *T.D.,* a 17-year old juvenile had been found delinquent in 2006 following the commission of two counts of rape. *Id*. at ¶ 2-3. He was committed to DYS and was later transferred to a "staff-secure" residential treatment facility, where he stayed until August 2008. *Id.* at ¶ 3-6. At that point, the juvenile was transferred back to DYS, where he stayed until he was 21 years old. *Id.* at ¶ 6 and 21.

**{¶ 17}** The court held a sexual offender classification hearing in January 2008, during the time the juvenile was at the residential treatment facility. The court then filed an entry in February 2008, designating the juvenile as a Tier III juvenile sex offender registrant. *Id.* at ¶ 5. The juvenile did not did not timely appeal from this decision. *Id.* at ¶ 37.

**{¶ 18}** In August 2009, the juvenile filed a motion to vacate his Tier III classification. The basis of his motion was that the court lacked jurisdiction, because it failed to follow proper statutory procedures. *T.D.*, 12th Dist. Clinton No. CA2010-01-002, 2010-Ohio-6081, at ¶ 6. After holding a review hearing in December 2009, the court reclassified the juvenile as a Tier II

offender.  The court also overruled the motion to vacate.  *Id.* at ¶ 6-7.  This review hearing occurred after the juvenile was 21 and had been released from the custody of DYS.  *Id.* at ¶ 24. The juvenile then appealed the denial of his motion to vacate.  *Id.* at ¶ 7.

{¶ 19}    Subsequently, the Twelfth District Court of Appeals concluded that the trial court erred in reclassifying the juvenile before he had been released from DYS.  The court's conclusion was based on R.C. 2152.83(A)(1), which requires courts to issue sex offender classifications to juveniles aged 16 or 17 only upon their release from a secure facility.  *Id.* at   ¶ 16-17 and 28-29.   Despite the error, the Twelfth District Court of Appeals refused to remand the case to allow the juvenile court to proceed from the point of error.  *Id.* at ¶ 35.   In this regard, the Twelfth District Court of Appeals concluded that the error was an improper exercise of jurisdiction, rendering the judgment voidable rather than void, and that "defects in a trial court's exercise of subject matter jurisdiction may not be challenged in a collateral attack."  *Id.*, citing *State v. Filiaggi*, 86 Ohio St.3d 230, 240, 714 N.E.2d 867 (1999).

{¶ 20}    In *Filiaggi*, the Supreme Court of Ohio stated that " 'where it is apparent from the allegations that the matter alleged is within the class of cases in which a particular court has been empowered to act, jurisdiction is present.   Any subsequent error in the proceedings is only error in the "exercise of jurisdiction," as distinguished from the want of jurisdiction in the first instance.' "  *Id.* at 240, quoting *In re Waite*, 188 Mich. App. 189, 200, 468 N.W.2d 912 (1991). The Supreme Court of Ohio also remarked that:

" '[I]n cases where the court has *undoubted jurisdiction of the subject matter, and*

*of the parties*, the action of the trial court, though involving an erroneous exercise

of jurisdiction, which might be taken advantage of by direct appeal, or by direct

attack, yet the judgment or decree is not void though it might be set aside for the irregular or erroneous exercise of jurisdiction if appealed from. *It may not be called into question collaterally.*' " (Emphasis sic.) *Id.*, quoting *Waite,* which in turn quotes *Jackson City Bank & Trust Co. v. Fredrick*, 271 Mich. 538, 544-546, 260 N.W. 908 (1935).

**{¶ 21}** Based on the decision in *Filiaggi*, the Twelfth District Court of Appeals concluded that the juvenile's "motion to vacate his original classification for lack of jurisdiction amounted to an impermissible collateral attack on a voidable judgment." (Citations omitted.) *T.D.*, 12th Dist. Clinton No. CA2010-01-002, 2010-Ohio-6081, at ¶ 38.

**{¶ 22}** *T.D.* was decided prior to the decision of the Ohio Supreme Court in *State ex rel. Jean-Baptiste v. Kirsch*, 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302. In that case, a juvenile court had scheduled a hearing to determine Jean-Baptiste's sexual offender classification, but the hearing was to occur after Jean-Baptiste turned 21. *Id.* at ¶ 5. Jean-Baptiste filed a complaint for a writ of prohibition to prevent the juvenile court from proceeding with the classification. *Id.* at ¶ 6. After the court of appeals denied the writ, Jean-Baptiste appealed to the Supreme Court of Ohio. *Id.* at ¶ 8.

**{¶ 23}** The Supreme Court of Ohio granted the writ of prohibition, finding that the juvenile court "patently and unambiguously" lacked jurisdiction to proceed with the classification of Jean-Baptiste, because he was no longer a "child" as defined by R.C. 2125.02. *Id.* at ¶ 7 and 32-33. The court also noted that Jean-Baptiste had included an argument that the juvenile court lacked "jurisdiction to classify him because the judge failed to hold a classification hearing within a reasonable time of his release from DYS." *Id.* at ¶ 7.

**{¶ 24}** As an initial matter, the Supreme Court of Ohio agreed with Jean-Baptiste that he did not fit within the definition of "child" outlined in R.C. 2152.02(C)(2). In this regard, the court noted that juvenile courts have "exclusive original jurisdiction '[c]oncerning any child who on or about the date specified in the complaint, indictment, or information is alleged * * * to be * * * a delinquent * * * child.' " *Id.* at ¶ 18, quoting R.C. 2151.23(A)(1). However, R.C. 2152.02(C)(1) defines a child as " 'a person who is under eighteen years of age, *except as otherwise provided in divisions (C)(2) to (8) of this section.*' " (Emphasis sic.) *Id*. at ¶ 19. The exception that Jean-Baptiste relied on is contained in R.C. 2152.02(C)(2), which provides that " 'any person who violates a federal or state law or a municipal ordinance prior to attaining eighteen years of age shall be deemed a "child" irrespective of that person's age at the time the complaint with respect to that violation is filed or the hearing on the complaint is held.' " *Id*.

**{¶ 25}** In this regard, Jean-Baptiste argued that "the extension of jurisdiction for a 'hearing on the complaint' in R.C. 2152.02(C)(2) is limited to matters of adjudication." *Id*. at ¶ 20. The Supreme Court of Ohio agreed, concluding that the offender classification hearing did not constitute a hearing on the complaint, because the adjudicatory and dispositional hearing occurred in 2007, and the classification hearing was not an adjudicatory hearing. *Id*. at ¶ 23.

**{¶ 26}** The dissent in *Jean-Baptiste* argued that the majority had improperly combined the jurisdictional argument with the argument regarding the juvenile court's failure to hold the classification hearing within a reasonable time. *Jean-Baptiste*, 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302, at ¶ 36 (O'Donnell, J., dissenting.) In responding to this argument, the majority stated that:

> [T]he dissent fails to recognize that Jean–Baptiste's first proposition of law

includes the argument that a court lacks jurisdiction to classify a child once the disposition has been fully satisfied. In Jean–Baptiste's merit brief, he specifically argues that a juvenile court has no jurisdiction over a disposition that has been fully satisfied or over a person who is no longer a child relative to that disposition. This argument is included under his first proposition of law, which asserts that a juvenile court is without subject-matter jurisdiction and personal jurisdiction to conduct an initial juvenile sex-offender classification hearing for an adult. *Id*. at ¶ 25.

**{¶ 27}** Additionally, the Supreme Court of Ohio stated that:

Because Jean–Baptiste was adjudicated a delinquent child and was committed to a secure facility, the statute is clear that the court must issue the order classifying the child as a juvenile-offender registrant at the time the child is released from the secure facility – not afterward. The statute is logical, given that the juvenile-offender registrant may be subject to certain registration requirements upon his or her release into the community. Because Jean-Baptiste was released on the day that he turned 21 and because R.C. 2152.83 specifies that classification must occur when a child is released from a secure facility, the juvenile court patently and unambiguously lacks jurisdiction to classify Jean-Baptiste after his 21st birthday, when he was no longer a child. *Id*. at ¶ 28.

**{¶ 28}** After making these comments, the Supreme Court of Ohio noted that its decision was in accord with a prior decision holding that " '[a] juvenile court does not have the jurisdiction to reimpose a suspended commitment to a Department of Youth Services facility

after a juvenile has been released from probation.' " *Id*. at ¶ 29, quoting *In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, syllabus. In this context, the court stressed the distinction between a juvenile court's extended jurisdiction in cases of abuse and neglect, and the greater constraints required because of the criminal nature of delinquency proceedings. *Id*., citing *Cross* at ¶ 25. Thus, the Supreme Court of Ohio concluded that:

> The reasoning behind *Cross* also applies to Jean–Baptiste's case. Because this case arises out of a delinquency adjudication, Jean–Baptiste is entitled to basic due process protections. R.C. 2152.83(A)(1) plainly states that the court shall issue the classification order at the time of the child's release from a secure facility. This is a clear expression of the legislature's intent that juvenile courts lose their ability to hold classification hearings after that time. *Jean-Baptiste* at ¶ 30.

**{¶ 29}** In light of the holding in *Jean-Baptiste*, one could argue that a juvenile court would lose its ability to hold a classification hearing after disposition in cases like the present, where the court does not place the juvenile in a secure facility, and can only classify the juvenile at disposition. However, there are some points of distinction. As was noted in *Cross* and *Jean-Baptiste*, juvenile courts can lose jurisdiction where the juvenile is over 21, and they can also lose jurisdiction over juveniles who have completed their probation. By implication, jurisdiction is not lost where a juvenile has not yet completed probationary requirements, or is not yet 21. This is consistent with R.C. 2152.02(C)(6), which states that:

> The juvenile court has jurisdiction over a person who is adjudicated a delinquent child * * * prior to attaining eighteen years of age until the person

attains twenty-one years of age, and, for purposes of that jurisdiction related to that adjudication, except as otherwise provided in this division, a person who is so adjudicated a delinquent child * * * shall be deemed a "child" until the person attains twenty-one years of age. If a person is so adjudicated a delinquent child * * * and the court makes a disposition of the person under this chapter, at any time after the person attains twenty-one years of age, the places at which the person may be held under that disposition are not limited to places authorized under this chapter solely for confinement of children, and the person may be confined under that disposition, in accordance with division (F)(2) of section 2152.26 of the Revised Code, in places other than those authorized under this chapter solely for confinement of children.

{¶ 30} Under this theory, Dawson was still a "child" and was subject to the juvenile court's jurisdiction so long as he was: (1) adjudicated a delinquent child prior to attaining the age of 18; (2) was not released from probation before the classification hearing; and (3) was under the age of 21 before the hearing took place. Thus, even if the juvenile court erred by failing to hold the hearing at the time of disposition as statutorily required, the error is an error in exercising jurisdiction and cannot be collaterally attacked. *Filiaggi*, 86 Ohio St.3d at 240, 714 N.E.2d 867.

{¶ 31} The record before us is somewhat sparse, but it does indicate that Dawson was under the age of 18 when he was adjudicated delinquent; that Dawson had not yet been released from probation at the time of the classification hearing in 2005; and that Dawson was not yet 21 when the classification hearing took place. Accordingly, even if the juvenile court erred in

failing to timely hold the hearing, the court's decision cannot be collaterally attacked.   Dawson's proper remedy was to appeal from the 2005 classification decision.

{¶ 32}    Based on the preceding discussion, the First Assignment of Error is overruled.


III.   Did the Trial Court Err in Finding Dawson

Guilty of Failure to Notify?

{¶ 33}    Dawson's Second Assignment of Error states that:

The Trial Court Erred When It Found the Defendant Guilty of Failure to Notify Under R.C. 2950.05(A)(F)(1).

{¶ 34}    Under this assignment of error, Dawson contends that the trial court erred in finding him guilty of Failure to Notify because the juvenile judge vacated Dawson's sexual offender classification on November 16, 2012.   In support of this argument, Dawson has attached a copy of the judgment entry filed in the Montgomery County Juvenile Court on that date.   However, the entry was filed after Dawson was found guilty of Failure to Notify by the Montgomery County Common Pleas Court.   It, therefore, was not part of the trial court record.

{¶ 35}    The State has filed a motion to strike the appendix, arguing that matters that are not part of the trial court record cannot be considered on appeal.   We agree with the State.

{¶ 36}    It is well settled that "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter."   *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500, (1978), paragraph one of the syllabus.   Furthermore, "[f]actual assertions appearing nowhere except in a party's brief are not part of the record on appeal, and may not be considered by an appellate court when ruling

upon the merits of the case." *Baird v. Gillispie*, 2d Dist. Miami No. 99-CA-12, 2000 WL 43493, * 4 (Jan. 21, 2000), citing *Akro-Plastics v. Drake Industries*, 115 Ohio App.3d 221, 225, 685 N.E.2d 246 (11th Dist.1996).

**{¶ 37}** Accordingly, the State's Motion to Strike will be granted. The Second Assignment of Error is also overruled.

## IV. Conclusion

**{¶ 38}** All of Dawson's Assignments of Error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL and YARBROUGH, JJ., concur.

(Hon. Steve A. Yarbrough, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Tina M. McFall
Hon. Mary Lynn Wiseman