**EMPLOYERS' FIRE INSURANCE COMPANY, etc., Plaintiff-Appellant, v. UNITED PARCEL SERVICE OF CINCINNATI, INC., etc., Defendant-Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 7219. Decided February 20, 1950.

Elmer E. Strasser, Cincinnati, for plaintiff-appellant.
Leo J. Brumleve, Jr., Cincinnati, for defendant-appellee.

### OPINION

By MATTHEWS, J.:

This is an appeal from a judgment for the defendant-appellee rendered on a verdict which the court instructed the jury to return at the close of the evidence, on the motion of the defendant-appellee therefor.

The plaintiff and defendant are corporations; the former engaged in the business of insurance, and the latter, in the business of transporting and delivering packages and other merchandise. Jenny, Inc. was engaged in dealing in and storing merchandise.

The plaintiff-appellant issued a policy to Arthur Oberhelman and his wife, whereby it insured them against loss of or damage to certain coats or wraps, including a certain "natural ranch mink coat," and has succeeded to the rights of the insured.

The defendant entered into a contract with Jenny, Inc., to transport and deliver merchandise for it at a certain charge for each article, with perhaps a minimum weekly charge.

In February, 1943, Mrs. Oberhelman bought a mink fur coat from Jenny, Inc., and stored the coat with Jenny, Inc., on two occasions in 1944 and 1945, under a storage agreement fixing the value of the fur coat at $100.00 for the purpose of determining the storage charge, and limiting the liability of Jenny, Inc., in the event of loss or damage to it. A policy or contract was given Mrs. Oberhelman, evidencing these terms.

On April 9th, 1946, Mrs. Oberhelman and the manager of Jenny, Inc., entered into an oral agreement for the storage of six or seven coats, including the mink coat, upon the same terms that the fur coat was stored in 1944 and 1945, and Mrs. Oberhelman requested Jenny, Inc., to send for the articles. Jenny, Inc., thereupon instructed the defendant to go to the Oberhelman residence for the coats and transport them to the warehouse of Jenny, Inc. The defendant went to the Oberhelman residence, obtained the coats and de-

livered them to Jenny, Inc.'s warehouse. It is admitted that while this coat was "in the delivery truck of the defendant" some damage was done to it. The evidence shows that the damage resulted from some liquid, with which the fur coat came in contact, and that the exact nature of this liquid was unknown, but was of such a character that it permeated the pelt and the lining and that the effect could not be removed.

(1) It is urged that this judgment must be affirmed for lack of any proof of damage. In passing upon this contention, we must keep in mind the measure of damage for the loss of or damage to wearing apparel that had been used at the time of the loss or damage. The actual damage is not necessarily the difference in the market value before and after the loss or damage. It is said in **13 O. Jur.**, at 144, that: "Where the property converted is of a strictly personal nature, and has little or no market value; the measure of damages for the conversion of such property is its **reasonable value to the owner** at the time of the conversion. In fact, it may be said that an almost universal exception to the market-value rule is applied in cases of property converted consisting of purely personal belongings, such as household goods, portraits, manuscripts, and the like. The courts refuse to subject this class of goods to market-value rule, not because they have no market value, but because such market value does not afford the plaintiff a fair and just compensation."

The market value of used wearing apparel would be an uncertain guide in determining the compensation for its loss to the owner. It, of course, would be relevant evidence but could not be accepted as the yard-stick in determining the actual damage. On the subject of the measure of damages for conversion of wearing apparel, it is said in the annotation to Stack v. Gudgel, L. R. A., 1917 D. (—— Okla. ——, 158 Pac. 1144) 493, at 501, that: "In determining the damages for the loss or conversion of, or injury to, household goods, and wearing apparel, evidence of cost, in connection with wear and tear, the length of time they have been in use, their condition at the time of the loss or injury, the expense of replacing them with other goods of a similar kind and in a similar condition, and any other facts which will enable the jury to determine the worth of the goods to the owner at the time of the loss, is proper for the jury's consideration."

There was evidence that the fur coat was bought by Oberhelman in 1943 at a cost of $2028.35; that its replacement value or cost was fixed by a competent appraiser on July 6th, 1945, at $3500.00, and that at the time it was delivered to defendant

it was in perfect condition, according to the testimony of Mrs. Oberhelman, who was the owner at the time. She was asked what its value was to her at the time, but an objection to the question was sustained, and no profert of the witness' answer was made, although an exception to the ruling was noted. As already noted, it is our opinion that the reasonable value to the owner is the measure of damage. It is also our opinion that the owner is a competent witness, without other qualification, to testify to such value (**17 O. Jur., 473;** 20 Am. Jur., 751). The ruling on the objection cannot be held to be prejudicial error, in the absence of a profert.

However, we find that the evidence that we have recited, plus the testimony that it was worth not more than $700.00 in its damaged condition, was sufficient to require that the issue of the damages should be submitted to the jury. It is urged that the coat was bought two years before the damage and that the replacement value was fixed a year before that date, and that, therefore, they have no probative value. We do not agree. Taken together, they show a rising market value, and when taken in conjunction with the testimony that the coat was in perfect condition when delivered to defendant there is a basis for fixing the reasonable value to the owner.

(2) Next, it is urged that the defendant owed no duty to the plaintiff. It is said that the plaintiff was not a party to the contract whereby the defendant agreed to transport this fur coat—and that is true. And, certainly, no duty toward the owner of the coat arose from the mere entering into contractual relations between the defendant and Jenny, Inc. Upon receiving instructions from Jenny, Inc., to obtain this fur coat from Mrs. Oberhelman, the defendant could have declined to do so without incurring any liability to her, notwithstanding its breach of its contractual duty to Jenny, Inc. But the defendant did not decline to assume the task of transporting the coat. On the contrary, it accepted the custody of the coat from Mrs. Oberhelman for transportation. It is true that in so doing the defendant was acting as the representative of Jenny, Inc., and when it obtained the fur coat, its delivery to it—the defendant—was delivery to Jenny, Inc. But that legal aspect of the transaction does not destroy or justify disregard of the fact that the defendant came into proximity to the owner of the coat by seeking and obtaining the coat from her. And, by reason of that proximity, certain duties arose by mere operation of law. The defendant was charged by law with the duty to so act as not to injure the owner or his property through its wilful or negligent act. It

is no answer that the defendant acted in a representative capacity at the time. "An agent is liable for his torts in the same manner as any other person." 3 C. J. S., 129.

In considering whether an agent has brought himself within such proximity to a third person as to impose a duty upon him toward such third person, courts, particularly in earlier times, resorted to the distinction between misfeasance, malfeasance, and nonfeasance, and it has been frequently stated that the agent is liable to third persons for his misfeasance and malfeasance, but not for his nonfeasance. The difficulty with these terms as a criterion of the agent's liability is that the terms themselves require definition to determine when nonfeasance ceases and misfeasance or malfeasance begins. In 3 C. J. S., 130, it is said: "An agent is personally liable to third persons for injury resulting from his mismeasance or malfeasance, meaning by those terms the breach of a duty owed to third persons generally, independent of the particular duties imposed by his agency.— Accordingly, where an agent has entered upon an undertaking and neglects to perform a duty owed to his principal, if by this neglect he violates a duty he owes to a third person also, he is personally liable to the latter, his liability not being based on agency, but upon the ground that he is a wrongdoer or has failed in the common law obligation to use that which he controls so as not to injure another." Injury in this connection, we understand, includes both physical and property damage.

This rule and the basis therefor is stated in Section 354 of the Restatement of the Law of Agency (Vol. 2) as follows:

"An agent who undertakes to act for the principal under such conditions that some action is necessary for the protection of the person of others or of their tangible things is subject to liability to such others for physical harm to them or to their things caused by his undertaking and subsequent negligent failure to act, if the need for action is so immediate or emergent that withdrawal from the undertaking is no longer possible without unreasonable risk to them, and the agent should so realize."

When the defendant accepted the custody of this coat it knew that while it was in transit the only protection it would have would be such as it bestowed upon it and that its failure would result in damage.

The subject of the liability of an agent or independent contractor to a third person was under consideration in the case of Emery & Co. v. American Refrigerator Transit Co., (Io. ——, 184 N. W. 750) 20 A. L. R. 86, and was discussed in great detail in both the opinion and the annotation. The syllabus to that case is:

"A refrigerator company which contracts with a railroad company to supervise the loading of fruit into cars and ice the cars so as to preserve the fruit is liable to the shipper for negligent performance of its undertaking to such an extent that the fruit is injured in transit."

And in the annotation to this case at page 99 it is said: "An agent who violates a duty which he owes to a third person is answerable to such person for the consequences whether it be an act of malfeasance, misfeasance or nonfeasance. Stated in this form there is probably no case to be found to the contrary. But the doctrine laid down by some textwriters, founded on Lord Holt's dictum in Lane v. Cotton (1701) 12 Mod. 488, 88 Eng. Reprint, 1466, has caused much confusion in the decisions over a fictitious distinction between acts of malfeasance and misfeasance and those of nonfeasance.—

"If a servant owes a duty to a third person because of a contract with his master, there is no reason why he should not be liable for injury caused by its nonperformance."

See, also: Mollino v. Ogden & Clarkson, 49 A. L. R., 518 (243 N. Y. 450, 154 N. E. 307).

But it is said that Henshaw v. Noble, 7 Oh St, 226, is authority for the proposition that "an agent is never responsible to a third party for damages sustained through his nonfeasance." We do not so construe that case. No such proposition is stated in the syllabus, and a reading of the opinion reveals that what the court did was to reverse the judgment because the court in its charge made no distinction at all between the liability of the principal and agent. The agent was engaged to make an excavation. The building on the adjacent lot collapsed during the night when no work was being done, and fell into the excavation. The action was against the lessee of the lot on which the excavation was made, their contractors, architect, and a sub-contractor engaged to do the excavating. The court said at page 233 that: "On this subject we think the portions which we have copied from the charge of the court were calculated to mislead the jury. They convey the idea that negligence is always to be regarded as a misfeasance, as a positive wrong, which will subject the agent equally with his principal to liability." The court did not enter final judgment for this agent, but remanded the case for a new trial.

Now it is not the law of Ohio that an agent is never liable to third persons for injury caused by his nonfeasance. This is made clear by the case of Richards v. Stratton, 112 Oh St, 476, the first paragraph of the syllabus to which is:

"One who, through an agent of another, undertakes and enters upon a particular work, is required to exercise ordinary care in the manner of executing it, and if he negligently injures another is liable for the damage sustained."

And, at page 481, the court quoted from Osborne v. Morgan, 130 Mass. 102, with approval, as follows:

" 'It is often said in the books that an agent is responsible to third persons for misfeasance only and not for nonfeasance. And it is doubtless true that if an agent never does anything towards carrying out his contract with his principal but wholly omits and neglects to do so, the principal is the only person who can maintain any action against him for the nonfeasance. But if the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it so as not to cause any injury to third persons which may be the natural consequence of his acts; and he cannot, by abandoning its execution midway and leaving things in a dangerous condition, exempt himself from liability to any person who suffers injury by reason of his having so left them without proper safeguards. This is not nonfeasance, or doing nothing, but it is misfeasance, doing improperly.' "

See, also: **2 O. Jur., 801.**

So, we conclude that under the laws of Ohio, when the defendant accepted custody of the fur coat from its owner, it was charged with the duty of exercising care in its transportation, and that this duty was owing to the owner, and for neglect of that duty causing damage to the coat, it is liable to the owner.

(3) But, it is said that there is no evidence of negligence and it is true that the record is silent as to the circumstances under which the coat came in contact with the liquid, by which it was damaged. It is admitted that the damage occured while the coat was in defendant's custody. The facts were peculiarly within the knowledge of the defendant. Under such circumstances, we think the law cast upon the defendant the duty of explanation, and, in the absence of such explanation, an inference arises that an explanation would be detrimental to defendant. The defendant was a bailee who returned goods in a damaged condition. A prima facie case of neglect arose requiring an explanation. **5 O. Jur., 124.**

(4) The question naturally arises as to the extent of the defendant's liability. It was the representative of Jenny, Inc., engaged in performing its contract, when the delict occurred. Jenny, Inc's liability was limited to $100.00. Is defendant's liability similarly limited? We are of the opinion

that it is so limited. Section 347 of Restatement of the Law of Agency is: "An agent who is acting in pursuance of his authority has such immunities of the principal as are not personal to the principal." Had the principal acted in person in carrying this coat and had been sued for the damage done, no matter what the form of action, its liability would have been limited to $100.00. When it engaged the defendant to get the coat for it, it clothed the defendant with all the authority and rights which it, the principal, had against the owner, including the right to have liability limited to $100.00. It was a defense pro tanto, available equally to Jenny, Inc., and any and all in possession of the coat under its authority.

For these reasons, the judgment is reversed and the cause remanded for further proceedings according to law.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur in syllabus, opinion & judgment.