**WELCH, Appellee,**

v.

**SMITH, Appellant.**

[Cite as *Welch v. Smith* (1998), 129 Ohio App.3d 224.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970232.

Decided July 24, 1998.

*Paul J. Vesper,* for appellee.

*James L. Cobb,* for appellant.

---

MARIANNA BROWN BETTMAN, Judge.

This appeal arises from an award by the trial court in a bench trial in favor of the owner of a boat against the boat repairman in the total amount of $18,644.24.[1]

## FACTS

In the fall of 1994, plaintiff-appellee Patrick Welch took his boat to defendant-appellant James Donald Smith, a.k.a. Don Smith, d.b.a. Boatsmith Marine Service and Storage, to have the engine repaired. The two had done business together before. The boat was fifteen years old at the time Welch brought it in for repair. Smith prepared a repair estimate, which he submitted to Welch's insurance carrier, and was apparently authorized to proceed by April 1995.

The dispute in this case arose over the type of engine Welch claimed he wanted in his boat. Welch claimed that he repeatedly told Smith he would only take a marine engine in his boat. Smith denied this.

The problems in this case began when a friend of Welch's, who happened to be at Boatsmith's on his own business, saw what to him did not look like a marine engine being put into Welch's boat, and so informed Welch. Welch confronted Smith about this, first on the telephone, then personally. Welch, apparently for the first time, had his insurance company fax him a copy of the repair estimate for his boat.[2] The repair estimate indicated a "base engine" would be used. To Welch, this meant a marine engine. To Smith, it meant a truck engine, adapted for marine usage. According to one of Welch's witnesses, the expression "base engine" meant either one in the industry. It is quite clear from the testimony that it meant something different to Welch than it did to Smith.

Welch expressed to Smith his extreme displeasure about the nonmarine engine and demanded the return of his boat. Smith, in turn, demanded $1,500 for work performed. Welch refused to pay Smith $1,500. Smith refused to give Welch his boat back. All of this occurred in April 1995, at the beginning of the 1995 boating season. That same month, Welch contacted the Hamilton County Sheriff's Department and took two deputies and a wrecker to Boatsmith's in an attempt to

---

1. We have *sua sponte* removed this case from the accelerated calendar.

2. Welch did not pursue any lack-of-authorization claim or inadequacy-of-notice claim in this case. This distinguishes the instant case from *Albert v. Boatsmith Marine Serv. & Storage* (1989), 65 Ohio App.3d 38, 582 N.E.2d 1023. Welch did not challenge the amounts in the estimate, and later used this estimate for his own purposes when he got his boat repaired elsewhere.

retrieve his boat. He did not, however, institute any formal legal process for the return of his boat. At that time, Smith offered to release the boat for $700, which Welch refused to pay. Welch claimed that he offered $350 instead, which was half the labor charge estimated for the boat. A stalemate ensued. The boat sat out in Boatsmith's yard for two boating seasons.

Welch filed suit against Smith on February 2, 1996. Smith filed a counterclaim for labor and storage fees. In October 1996, Welch was able to retrieve his boat by posting $1,000 in escrow, to be held by Smith's attorney.

## TRIAL

After a bench trial, the court found that Smith had wrongfully detained Welch's boat from April 1995 until September 1996, resulting in both damage to the boat and interference with Welch's use and enjoyment of the boat. The court found that the boat had been damaged in the amount of $1,808.08, and because the court found a violation of the Consumer Sales Practices Act, it tripled that amount pursuant to the Act to $5,424.24, and awarded Welch $3,220 in attorney fees under the Act. The court also awarded Welch the sum of $10,000 for the loss of enjoyment of his boat for two seasons, bringing the damages to $18,644.24.

As to Smith's counterclaim, the court found that Smith was not entitled to any storage charges on the boat, and that he had failed to prove the fair and reasonable value of labor performed. The court thus found against Smith on his counterclaim and ordered the $1,000 in escrow released to Welch. From this judgment Smith brings this appeal.

## LEGAL ANALYSIS

In order to resolve this appeal, we need to determine the correct law applicable to the facts of this case.

We begin with the first assignment of error, in which Smith asserts that the trial court erred in awarding him nothing on his counterclaim. We agree that this was error and hold that Smith was entitled to damages on a theory of quantum meruit.

It is undisputed in this case that Smith did perform some work on Welch's boat. It is also undisputed that, at the time Welch learned from a friend about the nonmarine engine, Smith had taken the old engine out of the boat and was in the process of modifying the new engine he had purchased for Welch for marine use. It is simply unarguable that Welch owed Smith something, and Welch knew it.

The finding by the trial court that Smith failed to present sufficient evidence to establish this claim is against the manifest weight of the evidence.[3] When Welch attempted to get his boat back while in the presence of the deputy sheriffs, Smith demanded $700, the amount estimated for labor on the initial repair estimate. Welch countered with an offer of $350, figuring that the work was about half done. We agree with the trial court that Smith was not entitled to storage charges for the boat. However, we hold that, based on this record, there was sufficient and undisputed evidence to establish that Smith should have been awarded the sum of $350 on his counterclaim for labor performed. Smith's first assignment of error is sustained.

In his second assignment of error, Smith asserts that the trial court erred in finding that this case is governed by the Ohio Consumer Sales Practices Act in and awarding damages accordingly. In his third assignment of error, Smith argues that the court erred in finding an excessive amount of damages for loss of use of the boat. We consider these assignments of error together and sustain them both.

Welch undeniably entrusted his boat to Smith for repairs. We agree with the trial court that Welch established that his boat had been damaged in the amount of $1,808.08. We disagree, however, with the trial court's legal analysis of Welch's damages.

While we do not dispute the fact that a boat repair is a consumer transaction, we disagree with the trial court that, under the facts of this case, Smith's "billing practices" were an "unconscionable demand for compensation to which he was not entitled" or constituted an unfair or deceptive consumer sales practice in violation of R.C. 1345.02. At best, the record clearly establishes that the parties never had a meeting of the minds about what type of engine Welch wanted and that neither party was particularly at fault for this. Given the lack of precision by both sides in this case, we simply cannot say that Smith's failure to bill Welch in a particular amount was a deceptive practice, or that his demands for payment were unconscionable.[4] Thus, we hold that, based on this record, the trial court erred as a matter of law in finding Smith's actions to be a violation of R.C. 1345.02. Because of this legal error, the trial court also erred in tripling the amount of damages to the boat and in awarding attorney fees to Welch.

---

3. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

4. Each side mitigated its damages to a certain extent. Welch got the engine he wanted from a different repair shop and used the insurance money to pay for it. Smith was able to sell the modified truck engine to another boat owner.

This is not to say that Welch is not entitled to recovery for damage to his boat. The question is what is the nature of the action entitling Welch to damages, and what kind of damages is he entitled to?

■■ Conversion is the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner.[5] By contrast, a bailment is the delivery of goods or personal property by one person to another in trust for a particular purpose.[6] In this case, a bailment for hire was created initially.

■ As this court noted in *Tremco, Inc. v. Banker,*[7] a very analogous case, where a bailor has proven a bailment and a subsequent refusal of the bailee to return the goods on demand, a prima facie case of conversion has been created. But, as in *Tremco*, if the bailee has a lawful excuse for nondelivery, he will not be liable to the bailor for conversion. In *Tremco*, such an excuse existed because the bailee had a warehouseman's lien. In this case, a legal excuse existed because R.C. 4585.01 permits a lien on watercraft for materials, supplies or labor in building, repairing, furnishing, or equipping the watercraft, and Smith asserted such a lien. Thus, in this case, we have a bailment, not a conversion.[8]

■ A bailee is obliged to exercise ordinary care in safeguarding the bailed property, and he must return the bailed property undamaged.[9] Thus, Smith, as bailee, owed Welch a duty of ordinary care toward the boat. The measure of damages is the difference in the value of the property before and after the damage.[10] Welch proved that Smith was negligent when he let the boat sit uncovered for two seasons and that this lack of ordinary care was the proximate

**5.** *Tabar v. Charlie's Towing Serv., Inc.* (1994), 97 Ohio App.3d 423, 646 N.E.2d 1132; *Bench Billboard Co. v. Columbus* (1989), 63 Ohio App.3d 421, 579 N.E.2d 240; *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.* (1985), 24 Ohio App.3d 91, 24 OBR 160, 493 N.E.2d 289.

**6.** *David v. Lose* (1966), 7 Ohio St.2d 97, 36 O.O.2d 81, 218 N.E.2d 442; *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 621 N.E.2d 1294.

**7.** (Aug. 21, 1985), Hamilton App. No. C–840696, unreported, 1985 WL 11443.

**8.** The evidence presented in this case substantiates this claim of bailment, even though the pleading states a claim for conversion. No objection was made to the presentation of evidence on this issue, which we consider to have been tried with the consent of the parties. Civ.R. 15(B).

**9.** *Collins, supra,* 86 Ohio App.3d at 831, 621 N.E.2d at 1297.

**10.** *Maloney v. Gen. Tire Sales* (1973), 34 Ohio App.2d 177, 63 O.O.2d 289, 296 N.E.2d 831; *Parrish v. Machlan* (Dec. 5, 1997), Hamilton App. No. C–961001, unreported, 1997 WL 757901.

cause of $1,808.08 in damages to the boat. However, this amount of damages in these circumstances does not fully compensate Welch for his loss. In addition to damages for loss in value, when the bailed property is an item of a personal nature, an owner can recover damages for the reasonable value of the property to him.[11] In this case, this could fairly include some loss of use of the boat.

The trial court awarded Welch $10,000 for the loss of use of his boat for two seasons. Given the fact that the boat was fifteen years old and cost Welch only $11,000 when he bought it, this award was excessive. It was also excessive because Welch took no legal action, such as seeking a writ of replevin, for the return of his boat until July 9, 1996, when he filed a motion for return of the boat. His counsel gave the court no explanation, when asked directly, why he took no legal action sooner.

We hold that, under all the facts and circumstances presented, Welch may be entitled to money damages for the loss of use of his boat, for some limited period of time between July 2, 1996, when he filed a motion for the return of the boat, and the beginning of October 1996, when the boat was returned to him. Welch is to be compensated only for that period of time after July 2, 1996, which the court determines was due to Smith's failure to cooperate in working out the terms of the exchange of the escrow money for the boat.[12] Damages due to Welch should be calculated on a per-diem basis during this period.[13]

Smith's fourth assignment of error, that the trial court erred in allowing an amendment to conform to the evidence, is rendered moot by this decision.

## SUMMARY OF HOLDINGS

By way of recapitulation, the judgment of the trial court is reversed, and this cause is remanded for the entry of judgment for Welch in the sum of $1,808.08

---

11. *Employers' Fire Ins. Co. v. United Parcel Serv.* (1950), 89 Ohio App. 447, 45 O.O. 475, 99 N.E.2d 794.

12. We cannot make this determination on the record before us. Although the parties stipulated to the amount of the escrow, it was not filed, and we do not know the date the agreement was reached. There was also no response filed by Smith to Welch's July 2 motion for the return of the boat, and the trial court is in the best position to determine why.

13. Per-diem damages should be calculated by using Welch's figure of $5,000 per boating season, with a "season" being defined by Welch as lasting six months and assuming an average of thirty days per month. Thus, the monthly loss in the boating season was $833.33, and the per-diem loss was $27.78. Using Welch's testimony that he used his boat five days a week, he is entitled to the per-diem sum for five days out of every seven the boat was wrongfully retained by Smith during this period.

plus an additional amount to be determined consistent with this opinion. Judgment is to be entered for Smith on his counterclaim in the amount of $350.

*Judgment reversed*
*and cause remanded*
*with instructions.*

SUNDERMANN, P.J., and DOAN, J., concur.