PRUITT, Appellee,

v.

LGR TRUCKING, INC. et al., Appellants.

[Cite as *Pruitt v. LGR Trucking, Inc.,* 148 Ohio App.3d 481, 2002-Ohio-722.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010405.

Decided Feb. 22, 2002.

Freund, Freeze & Arnold and Charles L. Hinegardner, for appellee.

Cohen, Todd, Kite & Stanford, LLC, and Christopher D. Cathey, for appellants.

MARK P. PAINTER, Presiding Judge.

{¶ 1}  Despite the lengthy procedural history of this case and the parties' concern that the facts are extremely complicated, the outcome is common sense. We affirm the judgment of the trial court, though not for all the reasons the court expressed in its conclusions of law.  A repairman acts at his own peril when he sells the repaired property in a dispute over the bill and does not comport with the controlling statute that outlines the proper sale procedures, even if he alleges that exigent circumstances exist.  But where a good-faith attempt to comply with the statute results in the determination of the value of the property, and the property sold is worth less than the owner's outstanding debt to the repairman, we will not reverse the trial court's decision to deduct the value of the property sold from the owner's debt.

{¶ 2}  Defendant-appellant LGR Trucking, Inc., agreed through its agent to pay plaintiff-appellee Charles Pruitt to repair its boat.  But LGR never paid, and Pruitt thus refused to return the boat.  Instead, Pruitt elected to attempt to collect the repair bill by suing LGR. Pruitt went to small claims court three times, and attended municipal court at least once before the case was removed to the court of common pleas, where multiple appearances were again required. The case has also been before an arbitration panel.  Like so many cases that we review, it is time for this one to end.

{¶ 3}  As the case wound through Hamilton County's court system, LGR's debt continued to grow due to compounding interest on the initial cost of the repairs and the continuing storage fees.  Eventually, the amount LGR Trucking

owed Pruitt exceeded the value of the boat. Under these circumstances, Pruitt's right to possess the boat until he was paid for his work became more of a burden to him than a benefit.

{¶ 4} Eight months into Pruitt's effort to collect the money that he was owed, his landlord told him that the building that he had rented for his business was going to be appropriated, and that he would have to relocate in about thirty days. Pruitt did not want to transport and house the boat during the relocation process. He did not abandon the boat. Instead, Pruitt contacted the Ohio Department of Natural Resources for advice about how to sell it. It responded with a letter outlining the proper procedure whereby, according to the Revised Code, an "owner of any property on which a watercraft * * * valued at less than ten thousand dollars has been left for six months without [the owner's] permission may sell the watercraft * * * at public auction." [1]

{¶ 5} Pruitt attempted to comply with the procedures outlined in the letter for the sale of the boat. He properly publicized the auction in the local paper.[2] He received a telephone appraisal by a disinterested expert that was based on the 1998 A.B.O.S. Marine Bluebook, which estimated the value of the boat at approximately $9,500.[3] He notified LGR Trucking by certified mail of the date and time of the auction.[4] But Pruitt did not wait the requisite forty-five days after notifying LGR Trucking to conduct the auction.[5] According to the record, LGR had only five days' notice before the boat was sold to a third party for $9,135.67.

{¶ 6} LGR counterclaimed against Pruitt for violation of the Ohio Consumer Sales Practices Act, for the torts of outrage, conversion, and abuse of process, and for the damages authorized by statute [6] for Pruitt's reliance on R.C. 4585.31 and his failure to comply with its notice provisions. The trial court found for Pruitt, concluding that there was no conversion because he had substantially complied with the applicable statute in auctioning the boat, and that LGR was not damaged by the sale because the value of the boat was less than what LGR owed Pruitt. The court found that LGR had owed Pruitt $10,138.59 at the time of the sale and applied the proceeds from the sale of the boat to that amount. Thus the

---

1. See R.C. 4585.31.

2. See R.C. 4585.31(E).

3. See R.C. 4585.31(D).

4. See R.C. 4585.31(B).

5. See R.C. 4585.31(C).

6. See R.C. 4585.34.

court awarded Pruitt $1,002.92, the difference between the proceeds from the sale of the boat and the outstanding debt. The court denied all of LGR's counter-claims.

{¶ 7} LGR now contests part of the trial court's decision, claiming that the court erred by (1) denying it damages under its conversion claim, (2) denying it damages under R.C. 4585.34 for the improper sale of the boat, and (3) improperly applying the proceeds from the sale of the boat to its outstanding debt. We overrule all three of LGR's assignments of error and thus affirm the judgment of the court. While the court may not have expressed its judgment as involving an award of damages to LGR, the court did apply the proceeds of the sale of the boat to its outstanding debt to Pruitt. Since LGR received a credit for the only damages to which it was entitled— the value of the boat when it was sold— the trial court's failure to label the sale a conversion was not prejudicial to LGR.

{¶ 8} Because LGR's first two assignments of error are intertwined on the issue of damages, we address them together. First, LGR does not appear to contest that Pruitt could have lawfully retained the boat until he had been paid, either under a common-law artisan's lien [7] or by statute.[8] Indeed, the record reflects that LGR was curiously uninterested in seeking possession of the boat during the dispute. LGR did not pursue a replevin action to regain possession of the boat. It did not offer to post a bond with the court to guarantee its debt pending the outcome of the litigation. Nor did LGR seek an injunction to halt the sale, though admittedly the record demonstrates that LGR only had five days' notice of the auction.

{¶ 9} While conceding that Pruitt was entitled to retain the boat, LGR insists that Pruitt's sale of the boat was unlawful. It is true that a common-law right to possession of another's personal property until payment is received for services performed does not equate to a right to dispose of the property. For the sale to have been lawful in this case, it would have had to have been authorized by statute. Pruitt maintains that he substantially complied with R.C. 4585.31. But LGR argues that Pruitt's reliance on this statute was inappropriate because the statute was meant to address "abandoned" watercraft. Further, LGR argues

---

7. See *Cleveland Auto Top & Trimming Co. v. Am. Fin. Co.* (1931), 124 Ohio St. 169, 177 N.E. 217, syllabus; *Metro. Securities Co. v. Orlow* (1923), 107 Ohio St. 583, 587, 140 N.E. 306, 307; *Shearer v. Bill Garlic Motors, Inc.* (1977), 59 Ohio App.2d 320, 323–324, 394 N.E.2d 1014, 1016–1017; *Martin v. Ohio Citizens Bank* (June 30, 1999), Lucas App. No. L–98–1218, 1999 WL 435469; *Stephens v. Eberly* (Apr. 18, 1990), Wayne App. No. 2512, 1990 WL 50176.

8. See R.C. 4585.01; *Welch v. Smith* (1998), 129 Ohio App.3d 224, 229, 717 N.E.2d 741, 744.

that even if the statute were to have been applicable to these circumstances, LGR did not receive the requisite notice.

{¶ 10}  We agree that Pruitt's sale of the boat was not authorized by statute.  An argument could be made that, by failing to pursue available judicial remedies for the return of the boat, LGR had indeed "abandoned" it.  But R.C. 4585.31 does not use the term "abandoned."  Instead, it applies to watercraft that have "been left for six months without permission."  Pruitt could not exercise his right to possess the boat and then claim that it was on his property without his permission.  We note that an analogous statute pertaining to motor vehicles has been similarly interpreted.[9]

{¶ 11}  Further, even if R.C. 4585.31 had been applicable in these circumstances, Pruitt did not provide LGR with the notice to which it was entitled.  We cannot excuse this failure to conform to the statute under the rubric of substantial compliance, even though Pruitt believed that his business location was being appropriated.  According to the record, Pruitt actually maintained his business in its original location far longer than the forty-five-day notice period required by the statute.

{¶ 12}  "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights."[10]  Pruitt lawfully withheld the boat from LGR, but then unlawfully sold it to the exclusion of LGR's ownership rights.

{¶ 13}  "The measure of damages in a conversion action is the value of the converted property at the time of the conversion."[11]  Despite LGR's contentions to the contrary, we do not disturb the trial court's finding that the value of the boat was determined by its sale price and Pruitt's attempts to adhere to R.C. 4585.31.  Thus Pruitt owed LGR $9,135.67 for conversion of the boat, and for his failure to comply with R.C. 4585.31.

---

9.  See R.C. 4505.101;  *Estep v. Johnson* (1998), 123 Ohio App.3d 307, 318, 704 N.E.2d 58, 65; *Team Fleet Financing Corp. v. Mike Kaeser Auto Body & Sales, Inc.* (Apr. 14, 2000), Hamilton App. No. C–990630, 2000 WL 376430.

10.  See *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 175, citing *Zacchini v. Scripps–Howard Broadcasting Co.* (1976), 47 Ohio St.2d 224, 226, 1 O.O.3d 129, 130, 351 N.E.2d 454, 456, citing *Railroad Co. v. O'Donnell* (1892), 49 Ohio St. 489, 497, 32 N.E. 476, 478.

11.  See *Brumm v. McDonald & Co. Securities, Inc.* (1992), 78 Ohio App.3d 96, 104, 603 N.E.2d 1141, 1146, citing *Erie RR. Co. v. Steinberg* (1916), 94 Ohio St. 189, 113 N.E. 814, paragraph two of the syllabus, and *Baird v. Howard* (1894), 51 Ohio St. 57, 36 N.E. 732, paragraph one of the syllabus.

{¶ 14}  But that is all that Pruitt owed LGR. LGR was not entitled to compensation for the loss of use of the boat [12] because, as noted above, LGR was not entitled to possess and enjoy the boat while its bill remained unpaid.  And while punitive damages may be allowed in a conversion action "when the conversion involves elements of fraud, malice, or insult," [13] we hold that such circumstances were not present in this case.

{¶ 15}  We thus overrule LGR's first two assignments of error.  It received the damages from the trial court to which it was entitled in the form of a credit on its outstanding debt.  But, in its final assignment of error, LGR objects to the form the damages took.  Specifically, LGR argues that the trial court erred by deducting the proceeds of the sale of the boat from the amount it owed Pruitt and ordering it to pay Pruitt the remaining balance.  LGR claims that this constituted a "setoff" of its damages against its outstanding debt, and that the setoff was improper because it was an affirmative defense that Pruitt had failed to plead.  We overrule LGR's third assignment of error.

{¶ 16}  LGR's reliance on principles of setoff is misplaced.  "Setoff, both at law and in equity, is that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction." [14]  Because the parties' debts to each other in this case were not based on independent contracts, the principle does not apply.  Further, we have previously affirmed a trial court's calculation of the amount owed by the respective parties based on similar circumstances [15] and believe that it constitutes an acceptable practice founded in judicial economy.

{¶ 17}  Thus, we overrule LGR's three assignments of error and affirm the trial court's judgment.

Judgment affirmed.

SUNDERMANN and WINKLER, JJ., concur.

---

12.  See *Welch v. Smith* (1998), 129 Ohio App.3d 224, 230, 717 N.E.2d 741, 744–745, citing *Employers' Fire Ins. Co. v. United Parcel Serv.* (1950), 89 Ohio App. 447, 45 O.O. 475, 99 N.E.2d 794.

13.  See *Parrish v. Machlan* (1997), 131 Ohio App.3d 291, 296–297, 722 N.E.2d 529, 533, citing *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 543 N.E.2d 464, overruled on other grounds in *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331.

14.  See *Walter v. Natl. City Bank* (1975), 42 Ohio St.2d 524, 525, 71 O.O.2d 513, 514, 330 N.E.2d 425, 427, citing *Witham v. South Side Bldg. & Loan Assn. of Lima* (1938), 133 Ohio St. 560, 11 O.O. 269, 15 N.E.2d 149.

15.  See *Team Fleet Financing Corp. v. Mike Kaeser Auto Body & Sales, Inc.* (Apr. 14, 2000), Hamilton App. No. C–990630, 2000 WL 376430.