[Cite as *Danopulos v. Am. Trading II, L.L.C.*, 2021-Ohio-2196.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IRENE DANOPULOS, | : | APPEAL NO. C-200350, C-200354 |
| Plaintiff-Appellee/Cross-Appellant, | : | TRIAL NO. A-1406301 |
| | : | |
| vs. | : | *O P I N I O N.* |
| | : | |
| AMERICAN TRADING II, LLC, | : | |
| Defendant-Appellant/Cross-Appellee. | : | |
| | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  June 30, 2021

*W. Michael Conway* for Plaintiff-Appellee/Cross-Appellant,

*Crehan & Thumann, LLC,* and *Robert J. Thumann,* for Defendant-Appellant/Cross-Appellee.

**BERGERON, Presiding Judge.**

{¶1} A robbery, a fistful of jewels, and a pawnshop provide the backdrop to this long-running dispute, which now reaches our court for the third time. The victim of the robbery sued the pawnshop that bought her jewelry from the thief (before reselling it to someone else) for conversion, and the question before us implicates the propriety of the damage award issued by the trial court. After a comprehensive review of the record, we affirm the trial court's damage award in part, but reverse and remand on the issue of damages for the plaintiff's diamond bracelet.

I.

{¶2} The roots of this case stretch back to 2014, when a group of thieves burglarized the Dayton-area home of Irene Danopulos. The thieves seized several pieces of valuable jewelry, then sold three of the stolen items—an emerald ring, a brooch, and a diamond bracelet—to American Trading II, LLC, a Cincinnati pawn shop. American Trading retained the jewelry for the requisite 15-day period, then sold it for scrap to a third party. *See* R.C. 4727.12(A). By the time that the detective working on Mrs. Danopulos's case traced the jewelry to American Trading, all three pieces had already been destroyed and alienated. Mrs. Danopulos accordingly sued for conversion.

{¶3} We have already heard two appeals in this matter. After the trial court initially granted summary judgment to American Trading, we reversed, holding that the pawn shop's compliance with R.C. Chapter 4727's reporting and retention requirements did not "eliminate[] the pawnbroker's liability for conversion with respect to stolen property in a claim brought by the true owner of the stolen property." *Danopulos v. American Trading II, LLC*, 2016-Ohio-5014, 69 N.E.3d 157, ¶ 21 (1st Dist.). On remand, the trial court considered testimony from both parties before determining that Mrs.

Danopulos "could not prevail on her claim absent evidence that she had made a demand for her property when it was still in American Trading's possession or control * * * ." *Danopulos v. American Trading II, LLC,* 2018-Ohio-2536, 115 N.E.3d 849, ¶ 6 (1st Dist.), *appeal accepted,* 153 Ohio St.3d 1495, 2018-Ohio-4092, 108 N.E.3d 1104, *appeal dismissed as improvidently granted and ordered non-precedential,* 157 Ohio St.3d 147, 2019-Ohio-3204, 132 N.E.3d 687. Mrs. Danopulos appealed and we reversed again, explaining that even if American Trading qualified as a "lawful" possessor of the stolen jewelry, its intentional acts resulting in the destruction of the property constituted a conversion. *Id.* at ¶ 16. We remanded the cause "for the trial court to enter judgment for Danopulos on the issue of liability and to determine the amount of her damages." *Id.* at ¶ 20. Although the Supreme Court initially accepted *American Trading II* for review, it subsequently dismissed the matter as improvidently granted and rendered our opinion non-precedential except for the parties inter se. *See American Trading II, LLC,* 157 Ohio St.3d 147, 2019-Ohio-3204, 132 N.E.3d 687.

{¶4} On remand once again, the trial court—under a new judge—reviewed the transcripts and evidence submitted prior to Mrs. Danopulos's second appeal. Surveying the record, it reasoned that although "American Trading offered evidence about the amount for which it purchased and sold the jewelry * * * only Danopulos'[s] expert witness, Michael Karaman, testified about the market value of the pieces at the time that they were converted." Mr. Karaman opined that the market value of the emerald ring was $31,500 and the market value of the brooch was $8,000, but he did not offer an opinion on the value of the bracelet. The trial court assessed the expert's testimony as more credible than American Trading's valuation of the brooch and ring, and it accordingly awarded Mrs. Danopulos "$31,500 for the ring and $8,000 for the brooch." But it held that without any specific expert testimony as to "the bracelet's value, Danopulos failed to prove her damages related to that piece of jewelry."

3

{¶5} American Trading now appeals the trial court's award of damages, characterizing Mr. Karaman's testimony as too speculative to support his $31,500 and $8,000 valuations of the ring and brooch, respectively. It points to its own transactions—purchasing all three pieces for $2,125, then selling the parts for $7,964.30—as the proper metric for damages. For her part, Mrs. Danopulos cross-appeals, arguing that the trial court erred in its finding that she failed to prove a non-speculative amount of damages for conversion of her diamond bracelet.

II.

{¶6} Both the assignment and the cross-assignment of error in this case involve a common issue of law: namely, the caliber of evidence a plaintiff must marshal to prove a non-speculative amount of damages in a conversion action. For sake of efficiency, we will address the legal standard for the two assignments together before embarking on the analyses.

{¶7} We review a trial court's finding of damages in a civil bench trial as to "whether [it] is against the manifest weight of the evidence." *See Koleti v. Mehlman*, 1st Dist. Hamilton No. C-190015, 2020-Ohio-2708, ¶ 8. "We are mindful that, in a bench trial, 'the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.,* quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Consequently, we will reverse the trial court's judgment only when the trial court "clearly lost its way and created a manifest miscarriage of justice." *Fischoff v. Hamilton*, 1st Dist. Hamilton No. C-120200, 2012-Ohio-4785, ¶ 11.

{¶8} The proper measure of damages in a successful action for conversion is " 'the value of the converted property at the time of the conversion.' " *Pruitt v. LGR Trucking, Inc.,* 148 Ohio App.3d 481, 2002-Ohio-722, 774 N.E.2d 273, ¶ 13 (1st Dist.),

quoting *Brumm v. McDonald & Co. Securities, Inc.*, 78 Ohio App.3d 96, 104, 603 N.E.2d 1141, (4th Dist.1992). Fair market value is defined as " '[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction.' " *Perez Bar & Grill v. Schneider*, 9th Dist. Lorain No. 11CA010076, 2012-Ohio-5820, ¶ 35, citing *Black's Law Dictionary* 1587 (8th Ed.2004). But calculation of fair market value is not always as simple as checking the number on a price tag or purchase receipt. The fair market value of an item can vary depending on the particular market in which it is exchanged. *See Akro-Plastics v. Drake Industries,* 115 Ohio App.3d 221, 227, 685 N.E.2d 246 (11th Dist.1996) ("[W]hen goods are not in the hands of consumers, but are still lodged somewhere in the chain of distribution, the concept of fair market value becomes less obvious."). A panel of drywall generally commands a lower price between a manufacturer and a home-builder than it would between a hardware store and a consumer; wholesalers can take advantage of special relationships or bulk discounts unavailable to retail buyers. Since damages in a conversion action are " 'determined by the harm done, the market that determines the measure of recovery * * * is that to which [the plaintiff] would have to resort in order to replace the subject matter.' " *Id.,* quoting Restatement of the Law 2d, Torts, Section 911 at 473, Comment D (1979). When the injured plaintiff in a conversion action is a consumer, the proper measure of damages is the retail price. *Id.* (" 'Thus, the consumer can recover the retail price; the retail dealer, the wholesale price.' "). Finally, when actual damages exceed the market value of converted property, courts can sometimes enhance this value in the interest of "mak[ing] the plaintiff whole." *R&S Distrib. Inc., v. Hartge Smith Nonwovens, LLC,* 1st Dist. Hamilton No. C-090100, 2010-Ohio-3992, ¶ 36, quoting *Pryor v. Webber*, 23 Ohio St.2d 104, 107, 263 N.E.2d 235 (1970).

{¶9} "An award of damages must be shown with a reasonable degree of certainty and in some manner other than mere speculation, conjecture, or surmise."

*Capital Plus, Inc. v. Parker Ents. Imperial Dist., Inc.*, 1st Dist. Hamilton No. C-030046, 2004-Ohio-3896, ¶ 53. However, "once a plaintiff establishes a right to damages, plaintiff's right will not be denied merely because the damages cannot be calculated with mathematical certainty." *Austin v. Chukwuani*, 2017-Ohio-106, 80 N.E.3d 1199, ¶ 21 (8th Dist.). We will not reverse a trial court's assessment of damages so long as "some competent, credible evidence supports it." *See Parker Ents.* at ¶ 53.

III.

{¶10} In its assignment of error, American Trading challenges the trial court's damages award on two fronts. First, it attacks the expert testimony of Mr. Karaman, characterizing his valuations of the jewelry as "based on speculation," "unreliable," and "inadmissible." Next, it contends that the trial court committed reversible error by declining to peg fair market value to the prices that American Trading paid—and subsequently received—for the jewelry.

A.

{¶11} First, we address the admissibility and weight of Mr. Karaman's testimony. "[A]n expert's opinion is admissible so long as it provides evidence of more than mere possibility or speculation." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 162. Moreover, we will not reverse a trial court's decision to admit expert testimony "absent an abuse of discretion." *Blair v. McDonagh*, 177 Ohio App.3d 262, 2008-Ohio-3698, 894 N.E.2d 377, ¶ 28 (1st Dist.).

{¶12} Regarding his qualifications, Mr. Karaman conveyed that he owned a retail jewelry business called James Free Jewelers and had been engaged in the field of fine jewelry and watches for 38 years. He described himself as a "graduated gemologist" who presented at various trade shows and professional organizations. Defense counsel

6

did not object to Mr. Karaman's qualifications below, and conceded at oral argument that he considered Mr. Karaman sufficiently qualified to offer an expert appraisal.

{¶13} Instead of questioning Mr. Karaman's credentials, American Trading finds fault with his methods. Unable to examine the destroyed pieces (by virtue of their destruction), Mr. Karaman relied on other sources: a grainy photocopy taken by American Trading, older photographs provided by Mrs. Danopulos, and information relayed to him from counsel. His valuation of the brooch relied heavily on Mrs. Danopulos's statement to counsel (telephoned along to Mr. Karaman) that her husband initially purchased it for $8,000. Noting the "handwork" of the piece, the settings of the jewels, and the presence of diamonds, Mr. Karaman concluded that "it is worth [the $8,000 paid], if not more." Defense counsel objected to hearsay on the statement that the Danopuloses initially paid $8,000, but does not re-raise the hearsay objection on appeal.

{¶14} Mr. Karaman took a different approach to evaluate Mrs. Danopulos's emerald ring. He concluded, based on the images and extant information, that the ring was "four carat and it's Columbian * * * and it's over a hundred years old." He then testified that a "middle range" Columbian emerald would sell for $6,000 per carat, making the emerald alone worth $24,000. To that number, he added $4,500 for the diamonds (three carats at $1,500 per carat, again premised on a midpoint quality assessment) and $3,000 for other "factors" including the age and handwork of the piece, for a total evaluation of $31,500. Finally, he mentioned that if the emerald was of higher quality—which he could not tell from the photographs—it could sell for as much as $20,000 a carat. Defense counsel objected to all of Mr. Karaman's testimony on the valuation of the ring, though he did not elaborate on specific grounds for the objection.

{¶15} Mr. Karaman's appraisals of the jewelry could have been clearer or more detailed. Counsel probed only superficially about his methods and sources, and Mr.

Karaman did not opine at all as to the value of the stolen bracelet. But the fact than an expert's testimony falls below the ideal does not render it "mere possibility or speculation." *Beasley,* 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, at ¶ 162. Mr. Karaman essentially testified that he received information about the pieces from Mrs. Danopulos's counsel; that the photographs he reviewed matched (or at least did not contradict) that information; and that based on the information he had and his own knowledge of market prices, the pieces had a minimum market value of $8,000 and $31,500. American Trading can certainly point out flaws in this chain of logic, but that doesn't render the testimony inadmissible. Indeed, taken to its logical extreme, American Trading's argument would find that no expert could ever offer an opinion in a factual scenario such as this one. We have an impeccably-credentialed expert confronting imperfect information because—by virtue of the defendant's actions—the jewelry no longer exists to be more precisely appraised.

{¶16} American Trading's complaint goes more to the weight of Mr. Karaman's testimony than admissibility. On this point, it emphasizes his failure to cite any relevant treatises or catalogues, and it criticizes that all of the information he used to make his valuations came (indirectly) from Mrs. Danopulos. Under the circumstances, however, neither factor is so unreasonable that it undercuts the credibility of Mr. Karaman's appraisals. His reliance on midpoint valuations for the jewels represents a reasonable means of calculating a valuation and certainly sits within the core of his expertise. In fact, he arguably undervalued the items considerably by not ascribing much (if any) value to the metals and artistry for each piece. These items were one-of-a-kind pieces, with artistic and antique value beyond the sheer price of the gems and metals they contained. In light of American Trading's decision to scrap the pieces (which precluded a thorough examination of them) it makes perfect sense that the owner of the jewelry— Mrs. Danopulos—would be the best alternative source of information. We will not

penalize her for a lack of "mathematical certainty" in her damages that stems directly from American Trading's act of conversion. *See Chukwuani*, 2017-Ohio-106, 80 N.E.3d 119, at ¶ 21; *American Trading II,* 2018-Ohio-2536, 115 N.E.3d 849, at ¶ 16 (holding American Trading's "intentional[] disassembli[ing]" of the jewelry to be an act of conversion).

{¶17} American Trading never seriously challenged Mrs. Danopulos's testimony that her husband originally purchased the brooch for $8,000, nor her description of the ring as containing a four-carat Columbian emerald and three carats of diamonds. The trial court did not fault Mr. Karaman for relying on Mrs. Danopulos's information in his appraisal of the items, implicitly finding Mrs. Danopulos to be a credible source. Without some contrary appraisal from American Trading or reason to question Mrs. Danopulos's credibility, the trial court's decision to accept Mr. Karaman's appraisals as the best measure of damages falls far from a "manifest miscarriage of justice." *See Fischoff*, 1st Dist. Hamilton No. C-120200, 2012-Ohio-4785, at ¶ 11. We reject the first issue raised by American Trading's assignment of error.

B.

{¶18} Next, American Trading argues that the trial court should have based its damages calculation on the prices that American Trading paid ($2,125) and received ($7,964.30) for the jewelry. However, there are many reasons to doubt American Trading's contention that these numbers represent a fair market value.

{¶19} The probative value of the initial sale from the thief to American Trading is easily disregarded. That sale was tainted by the thief's knowledge that he had no real claim of title, paid nothing for the jewelry, and needed to dispose of it without drawing attention to himself. The thief had every incentive to accept a price far below fair market value, even with the generous assumption that he knew what the pieces were worth. The

sale was not an "open market" and "arms-length" transaction. *See Perez Bar & Grill,* 9th Dist. Lorain No. 11CA010076, 2012-Ohio-5820, at ¶ 35.

**{¶20}** The transaction between American Trading and its scrap buyer is properly disregarded for a different reason: it is unrepresentative of the relevant market. Mrs. Danopulos is a consumer who would have to purchase fine jewelry from a retail shop, not a pawn broker or a scrapper trading in a handful of specific stones. Damages must reflect the harm done to her, and should therefore be based on retail—not mid-market— value. *See Akro-Plastics,* 115 Ohio App.3d at 227, 685 N.E.2d 246. Moreover, the record shows that American Trading did not maximize the value of its own sale of the jewelry. Mr. Karaman testified that the pieces had substantially greater value as art and antiques, and that the act of disassembling the jewelry seriously devalued it. American Trading's decision to sell the pieces for scrap indicates that it did not know (or did not care) that the pieces were worth more whole. Mrs. Danopulos's damages should not be curtailed by American Trading's decision to sell the pieces for less than retail price and destroy their antique and artistic value.

**{¶21}** As the trial court acknowledged in its decision, the only witness to testify as to the value of the pieces in the retail market for fine jewelry was Mr. Karaman. There are some issues with Mr. Karaman's testimony, but none so serious that they render the testimony inadmissible, and American Trading failed to offer any viable alternative measure of damages. Even if we harbored no concerns about American Trading's valuations, the fact that the judge picked the expert's opinion over American Trading's alternative fails to create a manifest weight issue on this record. We hold that competent and credible evidence supported trial court's damages award for the ring and brooch, and therefore overrule American Trading's assignment of error in full.

IV.

{¶22}   In her sole cross-assignment of error, Mrs. Danopulos argues that the trial court should have awarded $15,000 for her diamond bracelet. She calculates this number by combining Mr. Karaman's testimony that the value of the mid-range diamonds in her ring was $1,500 per carat and her own testimony that the bracelet contained 10 carats of diamonds.

{¶23}   We agree with Mrs. Danopulos that the trial court committed reversible error when it wholly denied damages for her diamond bracelet.  In its order awarding damages, the trial court reasoned that Mrs. Danopulos "failed to prove her damages" for the bracelet because "Karaman did not offer specific testimony as the bracelet's value." But this statement mischaracterizes a plaintiff's burden for proving damages.  Expert testimony can be an effective method to calculate damages beyond "mere speculation, conjecture, or surmise." *Parker Ents.,* 1st Dist. Hamilton No. C-030046, 2004-Ohio-3896, at ¶ 53.  It is not, however, the *only* method.  A plaintiff must prove her damages to "a reasonable degree of certainty." *Id.*  Lay testimony—combined with or independent of expert testimony—can sometimes be enough to meet this burden.

{¶24}   Consider a hypothetical example.   Let's say that Mrs. Danopulos purchased her diamond bracelet from a retail jeweler the day before the robbery, paid a value of $15,000, and retained her receipt.  Let's further suppose that she presented the receipt at trial and testified that it was an accurate record of her purchase.  Under these circumstances, expert testimony on the value of the bracelet would be entirely superfluous.  Unless we had some compelling reason to question the veracity of the receipt or the testimony, we would conclude that Mrs. Danopulos met her burden.

{¶25}   Of course, the circumstances of this case are not as clear-cut.  Because the bracelet was a family heirloom, Mrs. Danopulos was unable to testify to a prior purchase value.  She did testify, however, that the bracelet was made of gold, contained 10 carats

11

of diamonds, and originally belonged to her great-grandmother (likely making it over a century old). Combined with Mr. Karaman's testimony on the value of mid-range diamonds, this testimony was enough—if deemed credible—to establish a reasonable fair market value for the bracelet. It was certainly enough to prove that the bracelet's worth exceeded $0, which means that Mrs. Danopulos cannot be made "whole" by the existing damages award. *See R&S Distrib.,* 1st Dist. Hamilton No. C-090100, 2010-Ohio-3992, at ¶ 36.

{¶26} We conclude that the trial court erred by requiring specific, expert testimony of the bracelet's value in this case, and remand for a determination of the bracelet's valuation. Recognizing that a new trial judge will hear this matter, the court in its discretion can request new evidence or testimony on the valuation of the bracelet, or it may decide the matter on the state of the existing record. If the trial court deems Mrs. Danopulos's testimony on the bracelet to be credible, it should combine that testimony with Mr. Karaman's valuation of mid-range diamonds at $1,500 per carat to calculate the market value for the bracelet. Mrs. Danopulos's cross-assignment of error is sustained.

V.

{¶27} The trial court's damages award is sustained in part, reversed in part, and this cause is remanded for proceedings consistent with this opinion.

Judgment accordingly.

**WINKLER** and **HENDON, J.J.,** concur.

SYLVIA SIEVE HENDON, retired, from the First Appellate District, sitting by assignment.

Please note:

The court has recorded its entry on the date of the release of this opinion.